In the Matter of the Application of RUTH SASSON, as Administratrix, etc., of CHARLES SASSON, Deceased, Respondent, for an Order Directing GEORGE A. FERRIS and Others, Attorneys at Law Practicing under the Firm Name of FERRIS, SHEPARD, JOYCE & McCOY, Appellants, to Turn over Certain Moneys Collected by Them as Such Attorneys for Petitioner's Decedent.

First Department, February 13, 1931.

*Joseph M. Proskauer* of counsel [*Alexander D. Diamond* with him on the brief; *George A. Ferris*, appellant *pro se*], for the appellant George A. Ferris.

*John E. Donnelly*, attorney, for the appellants Woolsey A. Shepard and others.

*Benjamin Jaffe* of counsel [*Jaffe & Jaffe*, attorneys], for the respondent.

SHERMAN, J. This is an application for a summary order requiring attorneys to pay over moneys to their former client, the petitioner's decedent, Charles Sasson. Sasson engaged the firm of attorneys, of which Mr. George A. Ferris was a member, to act under a written agreement, dated May 15, 1924, and to bring suit against Harder and Fraser for a sum exceeding $75,000, agreeing to pay a retainer of $1,000 at such date, within a reasonable time, as he should be able to make the payment and when the attorneys should have rendered substantial services, and furthermore to pay all disbursements and forty per cent of any amount that might be realized from the litigation, whether through judgment or by settlement. Mr. Sasson apparently was without adequate means to pay for such services.

Thereafter that action was instituted which, after a trial lasting nearly two weeks, resulted in a verdict in Sasson's favor in the sum of $79,450. The judgment then entered was affirmed upon appeal to this court (220 App. Div. 706), and was paid after fruitless efforts by defendants to obtain leave to appeal to the Court of Appeals.

The record in that case is stipulated as part of the record on this appeal. It shows that the attorneys rendered arduous and faithful services of high quality to Sasson. His recovery depended upon establishing his claim that he had been employed by defendants in that action as a salesman in the Argentine Republic and had received an exclusive license for ten years from the Argentine government to manufacture fleece-lined underwear in Argentina; that defendants had agreed to form a corporation with a paid-in capital of $300,000 in order to exploit that concession; that Sasson was to receive one-third of its capital stock in return for the transfer of the governmental license. Instead, however, they formed but a small corporation with a capital of $20,000, of which Sasson received one-third of the stock, which shares defendants later obtained from him for a small sum. The verdict of the jury was for damages for failure to form the larger corporation.

Serious questions arose in the case, both of fact and of law; the attorneys by diligent efforts, careful preparation and extended examinations before trial discovered several hundred communi-

cations which tended to substantiate the theretofore uncorroborated oral statement of Sasson.

Upon the hearing before the referee herein, petitioner Sasson made serious charges against the attorney whose efforts had been responsible for the successful result of the action, accusing him of altering the signed written retainer by inserting therein forty per cent for services without his knowledge. The referee properly found that this accusation was entirely groundless. Undoubtedly the conduct of the attorney toward his client, as shown by the proof, was honorable throughout their dealings.

The main question upon this appeal grows out of the reduction by the learned Special Term of the amount to which the lawyers were entitled. It determined that thirty per cent of the recovery was fair compensation for the services rendered, instead of the forty per cent actually agreed upon. This conclusion was reached by the Special Term under the belief that it had the power to reduce the attorneys' compensation to the lesser sum. But the court was powerless to rewrite and change a contract validly made. The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law, except as specified in certain infants' cases (Judiciary Law, § 474). The parties being free to contract, their agreement may not be set aside unless the proof establishes that fraud has been perpetrated or advantage taken of a position of confidence and trust to obtain an unconscionable advantage. (*Ransom* v. *Cutting*, 188 N. Y. 447; *Audley* v. *Jester*, 148 App. Div. 94; 212 N. Y. 573.)

Petitioner also protests against being held liable for the attorneys' services rendered to his son in an action brought in behalf of his son against Fraser. The lawyers' claim that Sasson agreed to pay for those services was upheld by the referee, but the Special Term erroneously ruled that the agreement of petitioner to assume responsibility for his son's debt was without consideration and eliminated it from the amount to which the lawyers were entitled.

The evidence is clear that Sasson agreed to make this payment in order to prevent the attorneys from ceasing to act for the son, and the attorneys thereupon continued to serve. His was an original promise which was subsequently confirmed in writing in a statement of account prepared by respondents and signed by petitioner.

Nor can the claim of Sasson that he was ignorant and unable to comprehend the nature of the writings signed by him be given credence. While his native language was Arabic, which employs an entirely different script, nevertheless he wrote in English to the attorneys and exchanged many letters and cablegrams with Harder

and Fraser, whom he later sued. The referee was not impressed with the attempted exhibition of ignorance on the part of Sasson but found him to be intelligent, familiar with figures, and concluded that he was in no wise overreached by the attorney when the contract of retainer was signed.

Moreover there were two different statements of account signed by Sasson. He claimed that he had no copy of the first statement of account, but his signature to that paper admits receipt of a copy, which, so the referee found, had been given to him. He admitted receipt of the other. These signed accounts stated are of controlling probative value. (*Rodkinson* v. *Haecker*, 248 N. Y. 480.) The court fell into the error of believing that the attorneys intended to waive all reliance upon the accounts stated. This conclusion was drawn from the language of Mr. Ferris near the beginning of the hearing where he stated that he was not going to be technical on the question of the character of proof; that he recognized that he was an officer of the court and that the petitioner was entitled to the benefit of full proof without any restrictions within reasonable limitations. That was far from abandoning reliance upon these unimpeached statements of account as evidence sufficient to overthrow the petitioner's claims.

The amounts retained by the attorneys were justified by the work done and were in accord with the petitioner's explicit agreements.

The order appealed from should be reversed, with costs, the referee's report confirmed, and the petition denied, with costs.

DOWLING, P. J., MERRELL, FINCH and MCAVOY, JJ., concur.

Order reversed, with costs, the referee's report confirmed and the petition denied, with costs.