228 N.J. Super. 306 (1988)
549 A.2d 867
TABITHA MODERY, AN INFANT BY HER GUARDIAN AD LITEM, KEITH MODERY, AND KEITH MODERY, INDIVIDUALLY, PLAINTIFF,
v.
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 1988.
Decided October 18, 1988.
*307 Before Judges PRESSLER, O'BRIEN and SCALERA.
Generoso Squitieri, attorney of record for plaintiffs appears pro se on this appeal.
The opinion of the court was delivered by SCALERA, J.A.D.
Generoso Squitieri is the attorney of record for plaintiffs in this suit for personal injuries filed pursuant to R. 4:44-1 et seq., and he appeals from the trial court's decision to allow him a fee of only $2,000 plus costs from the total settlement of $35,000.
Tabitha Modery was three years old on September 25, 1987 when she was riding as a passenger in an auto owned and operated by her mother, Alexandra Modery. As a result of the mother's negligent operation of the automobile, the infant fell out of the vehicle and apparently suffered severe personal injuries. At the time Alexandra's automobile insurance policy had lapsed for non-payment of premiums.
Keith Modery, the natural father of Tabitha, was then in the process of obtaining a divorce from Alexandra and was represented by the appellant Squitieri for that purpose. On November 19, 1987 Keith entered into a separate retainer agreement with Squitieri. Under this agreement, Squitieri would also *308 represent Keith's interests, and those of his infant daughter Tabitha, against Alexandra for damages arising out of the accident of September 25, 1987. The agreement specifically provided that Keith was acting as "guardian ad litem" for Tabitha and that he was not responsible to pay to Squitieri any fee which would "exceed 25%" of any recovery.
Because Alexandra's insurance had lapsed, Squitieri asserted a claim on behalf of Tabitha and Keith against the latter's insurance carrier, Liberty Mutual Insurance Company under the "uninsured motorist coverage" of his policy. At first, Liberty resisted any payment because of its refusal to accept that Tabitha was a member of Keith's household as required by its policy. After several months, Squitieri finally managed to provide proof to that effect to Liberty's satisfaction, at which time Liberty agreed to pay "personal injury protection," (PIP) benefits resulting from Tabitha's injuries as well as the policy limit of $35,000 on the uninsured motorist coverage of the policy for the injuries which Tabitha had sustained.
As a result the instant complaint was filed pursuant to R. 4:44-1 et seq., to have the court approve the settlement ("friendly") involving an infant and a hearing was held on January 7, 1988. At that time Squitieri appeared for the plaintiffs and another attorney appeared to protect Liberty's interests.
The trial judge acknowledged the factual background heretofore noted and observed that the Liberty's maximum liability under Keith's policy was $35,000, and thus "there is nothing further that we can do on behalf of the child in this case" to recover any more monies from the mother or any other party. However, he refused to honor the 25% retainer agreement entered into by Keith on behalf of Tabitha because he felt that it was inimical to the child's interest and enforcement of such an agreement would violate the court's duty to protect that interest. He therefore allowed a counsel fee of only $2,000 plus costs of $275 instead of the retainer agreement amount of 25% or $8,681.25, plus costs. He suggested that his decision to reduce the fee was based also on his perception of the minimum *309 effort required to be expended by Squitieri in obtaining the $35,000 settlement.
Squitieri filed a motion for reconsideration of the fee allowance which he supported by his affidavit detailing the services rendered to plaintiffs in connection with this case. Keith also indicated his approval of Squitieri's application and urged that the court honor the retainer agreement. The trial court again refused to increase Squitieri's fee and questioned the amount of the professional effort claimed to have been expended. He reiterated that the amount of $2,000 was a reasonable allowance for the attorney's work done in this matter. This appeal follows.[1] While Squitieri acknowledges the inherent power of the court to review the basic fairness and reasonableness of any contingent fee agreement, he argues strenuously that there was no reason for the court to dishonor that agreement in these circumstances. We agree.
R. 4:44-3 undertakes to detail the trial court's function in approving such "friendlies" and provides, in part, that,
The court, on the request of the claimant or the claimant's attorney or on its own motion, may approve the expenses incident to the litigation, including attorney's fees.
Under R. 1:21-7 our Supreme Court has specifically approved and dealt with the subject of attorneys' contingent fees. It has therein decreed that, in the case of an infant, such a fee shall not exceed 25% of the amount recovered by settlement. R. 1:21-7(c)(5). The authority of the Supreme Court to regulate this area was specifically reviewed and found to be appropriate by us in Amer. Trial Lawyers Assoc. v. N.J. Supreme Ct., 126 N.J. Super. 577 (App.Div. 1974), aff'd 66 N.J. 258 (1974). During the course of that decision we recognized the Court's right and obligation to regulate such fees and observed that any rule adopted in that regard must be presumed to be valid. However, we also noted, 126 N.J. Super. at page 592, that

*310 As the cases have recognized, contingent fee arrangements involve unique problems in the attorney-client relationship, including those arising from the establishment by contract of a method for compensation which bears no direct relationship either to the effort expended by the attorney or the actual value of the services. [Emphasis supplied].
In this case we conclude that Squitieri was entitled to have the trial court honor his contingent fee retainer agreement absent proof that doing so would amount to an unconscionable or unreasonable overreaching which would deprive the infant of monies otherwise due to her. Contrary to the trial court's bare conclusion, we think there was nothing to suggest that Squitieri had procured this fee arrangement in such a manner or that its effect was to unconscionably deprive Tabitha of monies due to her. Hughes v. Eisner, 14 N.J. Super. 58, 65 (App.Div. 1951). While the trial court's efforts to increase the infant's share of the settlement monies are laudable, it should not have done so at the expense of the attorney.
Thus, we vacate the judgment as it affects the division of the $35,000 settlement monies and remand the matter for entry of a corrected judgment allowing Squitieri his 25% fee plus the expended costs of $275, with the balance of those monies to be distributed to the infant plaintiff as directed previously.
NOTES
[1] We are aware that no one has appeared in opposition to appellant's contention that the trial court abused its discretion in arbitrarily reducing the fee from that agreed to in the retainer agreement.