The OKLAHOMA TURNPIKE AU-
THORITY, Plaintiff–Appellant
and Counter–Appellee,

v.

NEW LIFE PENTECOSTAL CHURCH
OF JENKS; Freddie Young, in his indi-
vidual capacity and as Trustee of the
Church; Earl Howard, in his individual
capacity and as Trustee of the Church;
Frank Jones, in his individual capacity
and as Trustee of the Church; Hayden
Barger, in his individual capacity and as
Trustee of the Church; Ray E. Bauman
and Jessie Bauman; Board of County
Commissioners of Tulsa County; and
John F. Cantrell, County Treasurer of
the County of Tulsa, State of Oklahoma,
Defendants–Appellees and Counter–Ap-
pellants.

No. 79185.

Supreme Court of Oklahoma.

Jan. 18, 1994.

Rehearing Denied March 9, 1994.

Richard W. Gable, Gable & Gotwals, and Thomas G. Hilborne, Jr., Hilborne & Weidman, and Randall S. Pickard, Pickard, Miller & Gray, Tulsa, for plaintiff-appellant.

Robert J. Nichols, John L. Boyd, Boyd & Nichols, Tulsa, for defendants-appellees.

OPALA, Justice.

Two issues are tendered by the condemnor, Oklahoma Turnpike Authority [Authority]: [1] Did the trial court *err* in assessing against the condemnor attorney's, expert witness, jury, and court reporter fees as well as a witness' travel expense? and [2] If an attorney's fee may be allowed, is the landowner's contract for a 40% contingency interest reasonable? We answer the first question in the negative as for the attorney's, expert witness and jury fees, and in the affirmative as to the court reporter fee and witness' travel expense. We respond to the second question in the affirmative. The landowner's counterappeal presents an additional question: Are the *nisi prius rejected* litigation expenses allowable against the Authority? Our answer is in the negative.

The Oklahoma Turnpike Authority [Authority] brought this condemnation action to acquire a tract of land owned in fee simple by New Life Pentecostal Church of Jenks [landowner]. The property is necessary for the construction of the Tulsa South Bypass known as the Creek Turnpike. The Authority sought to condemn the property when the landowner declined its $350,000.00 offer. The landowner retained legal counsel on a contingent-fee basis. The court-appointed commissioners determined the land to be valued at *$471,000.00*. The verdict was in the amount of *$535,400.00*. The landowner then pressed for an attorney's fee of $77,-275.18 *based on its obligation to the lawyer under the contingent-fee contract.*[1] Also sought was $20,315.26 in costs and litigation

---

1. The pertinent provisions of the January 22, 1990 contingent-fee agreement are:

"THEREFORE, Attorney agrees to commence the representation of Client and Client agrees to compensate Attorney for such representation under the following terms and conditions: * * *

"(c) In the event the case is tried to a District Court jury and a verdict is obtained *that exceeds* the Court-appointed Commissioners' award by at least 10%, then *Attorney shall be paid forty (40%) per cent of the difference between the amount of the verdict plus interest less costs and the amount of the final offer of the Condemnor* before suit was filed, recognizing that under the Oklahoma Supreme Court case of Root vs. KAMO Electric, Client is entitled to be awarded an attorney's fee to be paid by the Condemning Authority in an amount which will 'reimburse .... for reasonable attorney's fees actually incurred because of the

condemnation proceeding'. Therefore, the only formula to calculate the attorney's fees which will reimburse Client for attorney's fees and allow Client to enjoy the full amount of a jury verdict is:

$$F = (V + I - O) \times 40\%$$

In the above equation, 'F' is the attorney's fees, 'V' is the jury verdict, 'I' is accrued interest, 'O' is the final offer made by the Condemning Authority prior to the engagement of litigation.

If the Court awards attorney's fees, but because of a change in interpretation of Court awarded attorney's fees and/or change in legislation between the date of this Agreement and the ultimate jury award and attorney's fees awarded, those fees do not equal 'F' as calculated above, *then the fee will be the amount awarded by the Court plus that portion of fifteen (15%) per cent of the difference between the Court appointed Commissioner's award and the*

expenses. The trial court awarded the landowner $77,275.18 in attorney's fee and $12,771.20 in costs incurred for expert witness, jury and court reporter fees and a witness' travel expense. It rejected landowner's quest for litigation expenses of $3,483.06. The Authority assigns error in the trial court's award of an attorney's fee, expert witness fees and costs. If a counsel-fee award is the landowner's due, the Authority challenges the reasonableness of the 40% contingent-fee contract. The landowner's counter-appeal is for corrective relief from the disallowance of litigation fees.

# I

## THE TEACHINGS OF NEW

The trial court approved an assessment against the condemnor for expert witness fees ($12,000), jury fee ($70), court reporter fee ($691.20) and a witness' travel expense ($10.00); it disallowed $3,483.06 for copies, exhibit enlargements and mounting, photographs, model of church building, trial supplies, enlargements and maps.

■ *Oklahoma Turnpike Authority v. New* [2] settles a similar issue. *New* teaches

> *Offer required to cause attorneys to get a total fee of 'F'.* In no event will Client owe more than fifteen (15%) per cent of the difference between the Court appointed Commissioner's award and the Offer in addition to any fee awarded by the court to be paid by the Condemnor. * * * '' (Emphasis added.)

2. *Oklahoma Turnpike Authority v. New*, Okl., 853 P.2d 765, 766–767 (1993).

3. The terms of 27 O.S.1991 § 9 are:

"The provisions of this act shall be applicable to the acquisition of real property under the laws of this state for public use in any project or program in which federal, state or local funds are used."

The pertinent terms of 27 O.S.1991 § 11 are: "Where a condemnation proceeding is instituted by any person, agency or other entity to acquire real property for use as provided in Section 9 of this title and * * *
3. *If the award of the jury exceeds the award of the court-appointed commissioners by at least ten percent (10%),* the owner of any right, title or interest in such real property may be paid such sum as in the opinion of the court will reimburse such owner for his *reasonable attorney, appraisal and engineering fees,* actually

that in condemnation proceedings the Authority *qua* condemnor is subject to an assessment of attorney's, appraisal, and engineering fees (27 O.S.1991 §§ 9, 11),[3] expert witness fees (66 O.S.1991 §§ 55, 57)[4] and of court costs (66 O.S.1991 §§ 55, 56).[5] But *New* rejects the allowability of other litigation expenses—i.e., copying, mileage, telephone and telefax expenses, and postage. The latter items constitute *components of the lawyer's overhead.*[6]

Applying the teachings of *New* to today's case, we hold that the trial court was *correct* in (a) *awarding* against the Authority counsel fee, expert witness fees and a jury fee and (b) *disallowing* the claimed litigation expenses. Because there is no warrant in our statutory or decisional law for assessing against a condemnor (1) court reporter fee [$691.20] and (2) a witness' travel expense [$10.00], we reverse the trial court's allowance of these items of expense.

# II

## REASONABLE ATTORNEY'S FEES IN CONDEMNATION PROCEEDINGS

The Authority asserts the landowner's 40% contingent-fee agreement with the lawyer is

incurred because of the condemnation proceedings. * * * '' (Emphasis added.)

4. The terms of 66 O.S.1991 § 55 provide in pertinent part:

"(D) ... if the award of the jury exceeds the award of the court appointed commissioners by at least ten percent (10%), then the owner of any right, title or interest in the property involved may be paid such sum as in the opinion of the court will reimburse such owner for his *reasonable attorney,* appraisal, engineering, and expert witness fees actually incurred because of the condemnation proceeding. The sum awarded shall be paid by the party instituting the condemnation proceeding." (Emphasis added.)

The application of § 55 to the Authority is based on 66 O.S.1991 § 57; *New, supra* note 2 at 767.

5. In *Oklahoma City Urban Renewal Authority v. Lindauer,* Okl., 534 P.2d 682, 684–685 (1975), the court held that a landowner is entitled to the costs of a jury trial where a condemnation proceeding verdict is in excess of the commissioners' award. *New, supra* note 2 at 767, follows the teachings of *Lindauer.*

6. *New, supra* note 2 at 767.

unreasonable. Our first task is to determine the extent of the landowner's contractual obligation to its counsel in the event the jury award exceeds the condemnor's initial offer by the statutorily mandated minimum of 10%.

### A.

### *The Employment Agreement Obligated The Landowner To a 40% Attorney's fee*

If an ambiguity arises from language used in a contract for the employment of legal counsel, which is not caused by extrinsic facts, construction of a provision presents a question of law for initial resolution of the nisi prius court.[7] Based on our four-corners' examination of the disputed document, we hold that its terms are clear and unambiguous.

The pertinent text of the agreement provides that if the case goes to a verdict, the landowner is obligated to pay an attorney's fee based on a formula of "forty ... per cent of the difference between the amount of the verdict [$535,400] plus interest less costs [$7,787.94] and the amount of the final offer of the condemnor [$350,000] before suit was filed."[8] *The trial court's award of $77,-275.18 to the landowner for its counsel-fee obligation is based on this formula.*

The Authority asserts that the landowner's counsel-fee obligation is governed by another provision in the contract which states that "[i]n no event will ... [the landowner] owe more than fifteen ... per cent of the difference between the Court appointed Commissioner's award [$471,000] and the offer [$350,000] in addition to any fee awarded by the court to be paid by the Condemnor."[9] We deem the quoted provision inapposite

here. When read in conjunction with the entire paragraph in which it is found, the pertinent text is applicable *only if,* during the period between the date of the agreement and the jury award, two events should occur: (a) there is a "change in interpretation" of the court-awarded fees or (b) a "change in legislation." Neither of these events has occurred in this case. Moreover, assuming the contested contract provision were invocable here, we must construe its terms to mean that if the court-awarded fee is less than 40% (computed according to the prescribed formula), the *landowner is obligated to supply the deficit* up to 15%.

We hence conclude that the *dispositive issue* is whether the trial court's 40% award for landowner's counsel-fee obligation—set for the *only amount* that could *fully* relieve the landowner of its contractual duty to its lawyer—*is in fact or in law excessive. If so, the landowner may then legitimately be expected to supply a part of the fee out of its own recovery.*

### B.

### *The KAMO–Liability Standard For Attorney's Fees*

*Root v. KAMO Elec. Coop., Inc.*[10] teaches that in condemnation proceedings a landowner's quest for an attorney's fee to be awarded against the condemnor is measured *by the extent of the landowner's obligation to its lawyer unless, of course, the obligation is excessive.*[11] When there is any doubt as to the quantum *of the fee we look to the limits on reasonableness or excessiveness of the owner-incurred obligation.* If the fee obligation is not excessive, the landowner must be relieved of counsel-fee liability and its burden may be shifted to the defeated condemnor.

---

7. *Walker v. Telex Corp.,* Okl., 583 P.2d 482, 485 (1978).

8. *See supra* note 1 for the quoted portions of the employment agreement.

9. For the quoted terms of employment agreement, see *supra* note 1.

10. *Root v. KAMO Elec. Coop., Inc.,* Okl., 699 P.2d 1083, 1091–1092 (1985).

11. Where there is *no contract or statute* establishing *the amount of* an attorney's fee that is due, the standards announced in *State ex rel. Burk v. City of Oklahoma City,* Okl., 598 P.2d 659, 661 (1979), apply in fashioning a reasonable fee. According to *Burk,* lawyers must present detailed time records and offer evidence to support the criteria set out in the Code of Professional Responsibility, 5 O.S.Supp.1983, Ch. 1, App. 3, DR 2–107 (now the Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A). *Adams v. Unterkircher,* Okl., 714 P.2d 193, 197 (1985).

This court should never be unmindful that a landowner *is entitled to be compensated fully* when its property is taken by the government in the exercise of the eminent domain power. Art. 2, § 24, Okl. Const.[12] The constitution's mandate, both state and federal,[13] strongly supports full indemnification by just or fair compensation. *The command requires that the owner be placed as fully as possible in the same position as that before the government's taking.*

## C.

### *The 40% Award Is Not Excessive*

■■■ Unless otherwise provided by statute or contract, the prevailing party in litigation is not generally entitled to an attorney's fee.[14] Counsel-fee awards are authorized in condemnation proceedings by 66 O.S.1991 § 55(D)[15] if the jury verdict exceeds the award of the court-appointed commissioners by at least 10%. The condemnee may be allowed a *reasonable* attorney's fee and certain expenses "actually incurred."[16] The statutory scheme in force recognizes as valid a contingent-fee contract of 50% *or less.* 5 O.S.1991 § 7.[17] A condemnor has the burden of showing that the contingent-fee provision is legally offensive or otherwise avoidable for excessiveness.[18]

■■■ There is a dearth of Oklahoma authority on the allowable quantum for legal

12. Art. 2, § 24, Okl. Const., provides that "[p]rivate property shall not be taken or damaged for public use without *just compensation....*" (Emphasis added.)

13. The pertinent terms of the 14th Amend., U.S. Const., are:
"... nor shall any State deprive any person of life, liberty, *or property*, without due process of law; ...." (Emphasis supplied.)

14. *Adams, supra* note 11 at 196.

15. For the text of 66 O.S.1991 § 55(D), see *supra* note 4.

16. For the quoted text, see 66 O.S.1991 § 55(D), *supra* note 4; *see KAMO, supra* note 10 at 1093.

17. The pertinent terms of 5 O.S.1991 § 7 are:
"It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim *not to exceed fifty (50%) per centum* of the net amount of such judgment as may be recovered, or such compromise as may be made, whether the same arises ex contractu or ex delicto, and no compromise or settlement entered into by a client without such attorney's consent shall affect or abrogate the lien provided for in this chapter...." (Emphasis added.)
Unless obtained by fraud, mistake, undue influence, or suppression of facts on the part of the attorney or in a manner contrary to public policy, contingent-fee contracts are generally deemed valid and enforceable. *See, e.g., Opperud v. Bussey,* 172 Okl. 625, 46 P.2d 319, 322–324 (1935); *State ex rel. Oklahoma Bar Ass'n v. Fagin,* Okl., 848 P.2d 11, 16 (1992); *Longmire v. Hall,* Okl.App., 541 P.2d 276, 278–279 (1975) (a contract for services affecting marital relations, such as a contingent-fee agreement for divorce litigation which makes the lawyer's compensation dependent on the amount recovered, contravenes public policy).

18. *See, e.g., Modery v. Liberty Mut. Ins. Co.,* 228 N.J.Super. 306, 549 A.2d 867, 869 (A.D.1988); *Application of Peters,* 271 A.D. 518, 67 N.Y.S.2d 305, 310 (N.Y.App.1946) (modified 296 N.Y. 974, 73 N.E.2d 560 (1947)); *Sasson v. Ferris,* 231 A.D. 524, 248 N.Y.S. 125, 128 (1931); *Ransom v. Cutting,* 188 N.Y. 447, 81 N.E. 324 (App.1907). *See also State ex rel. Howard v. Oklahoma Corp. Commission,* Okl., 614 P.2d 45, 49 n. 5 (1980), which teaches that contingent-fee contracts are not illegal or against public policy.

The dissent fails to recognize the distinction between a contract-based fee claim and one rested on a lawyer's service to the client who occupies the status of a prevailing party in the lawsuit. In the former case, the condemnor must pay the landowner's obligation to its lawyer to the extent that the obligation is reasonable and legally enforceable. *See KAMO, supra* note 10 at 1091–1093. In the latter category, the lawyer's quest for the court's fee *approval depends not on a contractual obligation* but on the reasonable value of services necessarily rendered for the client who won. The winning party's lawyer must, of course, go forward with proof to establish all the elements of the plea. *See in this connection Burk, supra* note 11; *Oliver's Sports Center v. National Standard Insurance Co.,* Okl., 615 P.2d 291 (1980). While the amount of the fee in both instances is subject to the court's scrutiny, a *contract-based fee is governed primarily by the landowner's valid obligation to the lawyer.* One who, as a third party, is adversely affected by the lawyer-landowner fee contract and challenges its amount or provisions has the burden of proving the obligation's unconscionability or unreasonableness. *See KAMO, supra* note 10 at 1091–1092. A slightly different remedial setting is presented when a lawyer representing a minor seeks the court's approval of a settlement with the tortfeasor and of the fee to be paid from the minor's recovery. The law applicable in that context casts upon the court a duty to review the contingent-fee contract between a lawyer and the

services in condemnation proceedings performed under a contingency contract. Few areas within the law governing the legal profession are as vulnerable to differing interpretations as the question of what constitutes an excessive contingent fee.[19] Contingent-fee arrangements are acknowledged as presenting unique problems for the attorney-client relationship. Especially criticized are agreements where the compensation method bears no direct relationship either to the effort expended or to the actual value of the legal services to be performed.[20] In the contingent-fee/eminent-domain context appellate courts have dealt with challenged excessiveness by examining the contingency contract in light of the statutory scheme and of the various criteria trial courts are required to consider when gauging the amount of a counsel fee to be awarded.[21]

Based on an extensive search of extant jurisprudence from our sister states, we conclude that the contingent-fee contract under review is not excessive.[22] A contest over the

---

minor's representative. The lawyer's quest for approval of a fee presents in that situation an *ancillary proceeding* in which the *lawyer* and *the minor's representative may be regarded as the parties opponent. Tisdale v. Wheeler Bros. Grain Co., Inc.*, Okl., 599 P.2d 1104, 1105–1106 (1979); *Abel v. Tisdale*, Okl., 619 P.2d 608, 610–611 (1980), *on remand* 673 P.2d 836, 838 (1983).

19. *See, e.g.*, Annot., Excessiveness or Adequacy of Attorneys' Fees In Matters Involving Real Estate—Modern Cases, 10 ALR5th 448–537 (1993).

20. *Modery, supra* note 18, 549 A.2d at 869 (quoting from *Amer. Trial Lawyers Assoc. v. N.J. Supreme Ct.*, 126 N.J.Super. 577, 316 A.2d 19 (1974), *aff'd* 66 N.J. 258, 330 A.2d 350 (1974)).

21. Appellate courts have considered various factors as guides in determining the reasonableness or excessiveness of contingent-fee contracts in eminent domain proceedings. *See, e.g.*, [1] the time and labor required—*Long Island Pine Barrens Water Corp. v. State*, 144 Misc.2d 665, 544 N.Y.S.2d 939 (1989); *Division of Ad., St. Dept. of Transp. v. Condominium Int.*, 317 So.2d 811, 813 (Fla.App.1975); [2] the fees customarily charged for similar services—*City of Gadsden v. Denson*, 590 So.2d 313, 314 (Ala.Civ.App.1991); *Glenview Park Dist. v. Redemptorist Fathers of Glenview*, 89 Ill.App.3d 623, 45 Ill.Dec. 29, 412 N.E.2d 162, 166 (1980); [3] the complexity of the proceedings—*Gadsden, supra; Condominium, supra* at 813; *United Gas Pipe Line Co. v. Becnel*, 417 So.2d 1198, 1204 (La.App.1982), *cert. den.*, 421 So.2d 1124 (1982); *Redevelopment Agency v. Garrett*, 479 So.2d 985, 989 (La.App.1985); [4] the contingent nature of the fee contract—*Gadsden, supra; State, Dept. of Transp. & Dev. v. Frabbiele*, 391 So.2d 1364 (La.App.1980); [5] the lawyer's background and qualifications—*Community Redevelopment Agency v. Krause*, 162 Cal.App.3d 860, 209 Cal.Rptr. 1 (1984); *Condominium, supra* at 813; *Glenview, supra; Frabbiele, supra; Gadsden, supra;* [6] *the lack of evidence that the fees were unreasonable—Krause, supra;* [7] substantial benefit to landowners from the lawyer's efforts—*Florida Power & Light Co. v. Flichtbeil*, 475 So.2d 1250, 1252 (Fla.App.1985), *review den.* 486 So.2d 597 (1986); [8] the novelty and difficulty of issues raised—*Flichtbeil, supra; Glenview, supra;* [9] the length of trial—*Dept. of Transp. v. Shaw*, 36 Ill.App.3d 972, 345 N.E.2d 153, 166 (1976), *affd in part and revd in part on other grounds*, 68 Ill.2d 342, 12 Ill.Dec. 177, 369 N.E.2d 884 (1977); [10] the measure of success achieved—*Frabbiele; Missouri P.R. Co. v. Nicholson*, 460 So.2d 615 (La.App.1984); [11] the weight of the lawyer's responsibility—*Frabbiele; Flichtbeil;* [12] the serious nature of expropriating an individual's property and the serious responsibility on the lawyer to protect a client's rights in the case—*Missouri, supra;* and [13] the factors contained in the bar disciplinary rules—*Condominium, supra* at 813 (i.e., DR 2–106(B), Code of Professional Responsibility). *See also* Annot., § 6, *supra* note 19.

22. Some courts have held that in some circumstances awards of attorney's fees in condemnation proceedings were excessive: [1] $66,645.96 (reduced to $33,728.09 due to reduction in underlying award)—where the state offered $29,251.00, the trial court awarded landowners $295,834.82, and the appellate court reduced the award to $164,163.35. The award of fees at the *statutory maximum* of 25% of the difference between the amount offered and the final award was held valid on the grounds that (a) expropriating individual property is a serious matter placing great responsibility on landowners' attorney, (b) the lawyer took steps necessary to protect the clients' rights, (c) unique and complex issues were involved in the case, and (d) the lawyer obtained a substantial increase in the clients' compensation. *State, Dept. of Transp. & Dev. v. Tynes*, 433 So.2d 809 (La.App.1983), *cert. den.*, 437 So.2d 1153 (1983); [2] $29,000 (later reduced to $14,000)—in a proceeding that was voluntarily dismissed before trial. The fee award was deemed excessive because (a) it was based on 66 hours of low-cost legal work (e.g., conferences, investigations, depositions, and filing answers) and (b) amounted to $439 per hour. *Dade County v. Oolite Rock Co.*, 348 So.2d 902 (Fla.App.1977). [3] $850,000 (reduced to $800,000)—where attorneys with well-known expertise recovered $5,537,308.22 for their client after 5 years of exceptionally difficult and complex litigation following the state's original offer of no compensation. Expert witnesses testified that reasonable fees would range from $800,000 to

value of condemned property is an important and serious matter which places considerable responsibility on the landowner's counsel. Although the record before us does not include a transcript of trial proceedings which culminated in the jury verdict in excess of 10% of the commissioner's award, we must assume that the favorable outcome was due in large measure to the diligent efforts and skillful advocacy of landowner's counsel. The 40% fee for a verdict-achieved recovery is well within the statutorily authorized quantum.[23] The Authority has not met its burden to provide for our review a record *that would overcome the presumption of correctness that* attaches *by force of law to a trial court's order.*[24] In short, nothing in this record affirmatively demonstrates error in the amount of the court-approved landowner's award for its counsel-fee obligation.[25]

## SUMMARY

■ Measured by the teachings of *New* the trial court did not err in awarding an attorney's fee, expert witness fees, a jury fee and in disallowing the claimed litigation expenses. Since there is no legal warrant for allowing court reporter fees and witness' travel expense, the trial court's order, insofar

---

$900,000. The amount was reduced as exceeding the attorney's own valuation of $800,000. *State, Dept. of Natural Resources v. Gables-by-The Sea, Inc.*, 374 So.2d 582 (Fla.App.1979), *cert. den.* 383 So.2d 1203 (1980). [4] $69,840—where the condemnor initially estimated the value of property at $1,119,000, but subsequently stipulated to a value of $1,400,000. The court held (a) that the award, which was based on rigid percentage of amount involved and which ignored most of the factors enumerated by the bar disciplinary rules, was an abuse of discretion and that (b) the time spent by the lawyer on the case should be given considerable weight. *Manatee County v. Harbor Ventures, Inc.*, 305 So.2d 299 (Fla.App.1975); [5] $68,440.50 (reduced to $55,-715.50 due to reduction in underlying award)—where the state offered $316,215 for taking highway frontage property for street-widening project and the trial court awarded landowners $590,-077, including $51,000 for economic loss. The appellate court found the economic loss award unwarranted and upheld the nisi prius decision for the *statutory maximum fee* of 25% based on the length of trial, the significant amount of technical testimony from experts, and the landowners' attorney was required to present numerous exhibits to the jury. *State, Dept. of Transp. & Dev. v. Jacob*, 491 So.2d 138 (La.App.1986), cert. den. 496 So.2d 331 (1986). [6] $242,550.15 (remanded for determination of reasonable fee) to the bank in mortgage foreclosure proceeding. The fee, which represented over 1,600 hours, was deemed excessive because there was essentially no defense and the case was resolved by summary judgment without extensive hearings or depositions. *Miller v. First American Bank & Trust*, 607 So.2d 483 (Fla.App.1992). *See also* Annot., § 6, *supra* note 19.

23. Excessive attorney's fees are also dealt with in the context of disciplinary proceedings. No single area of attorney conduct is more susceptible to public scrutiny and criticism than a lawyer's fee contract. *See, e.g.,* Excessive Fees and Attorney Discipline: *The Committee On Legal Ethics v. Tatterson*, 90 W.Va.L.Rev. 562 (1987); Comment, Attorney Discipline–Attorney May Be Punished For Charging Excessive Fee Absent Aggravating Circumstances, Fraud, or Dishonesty. *The Florida Bar v. Moriber*, 314 So.2d 145 (Fla.1975), 4 Fla.St.Univ.L.Rev. 126 (1976); Comment, Attorneys' Fees—Appellate Review of Trial Courts' Determination of Reasonable Attorneys' Fees—Federal Lodestar Method Rejected, 17 Memphis St.Univ.L.Rev. 163, 169–170 (1986). *We do not reach for settlement here any of these weighty disputes but merely conclude that in this case the contract does not offend the disciplinary criteria for excessiveness in the Oklahoma Rules of Professional Conduct, Rule 1.5, 5 O.S.1991, Ch. 1, App. 3–A.*

24. *Legal error may not be presumed from a silent record; it must be affirmatively demonstrated. Hamid v. Sew Original*, Okl., 645 P.2d 496, 497 (1982). *See Stewart v. Rood*, Okl., 796 P.2d 321, 324 n. 2 (1990); *Oxley v. City of Tulsa*, Okl., 794 P.2d 742, 748 (1990); *Hulsey v. Mid–America Preferred Ins. Co.*, Okl., 777 P.2d 932, 936 (1989); *Reeves v. Agee*, Okl., 769 P.2d 745, 753 (1989); *Ferguson v. Ferguson Motor Co.*, Okl., 766 P.2d 335, 338 n. 8 (1988); *Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 725 n. 16 (1986); *Eckel v. Adair*, Okl., 698 P.2d 921, 924 (1985); *Cox v. Smith*, Okl., 682 P.2d 228, 231 n. 4 (1984); *Johnson v. Johnson*, Okl., 674 P.2d 539, 546 (1983). On review, we always indulge in the presumption that a trial court's decision is correct; every fact not disputed by the record must be regarded as supporting the trial court's decision. *Davidson v. Gregory*, Okl., 780 P.2d 679, 683 n. 17 (1989). *See, e.g., Homeland Realty Co. v. Robison*, 39 Okl. 591, 136 P. 585 (syllabus ¶ 6) (1913); *Cox v. Warford*, 34 Okl. 374, 126 P. 1026, 1027 (1912); *Farmers' & Merchants' Bank of Coweta v. Sharum*, 21 Okl. 863, 97 P. 555, 556 (1908); *Board of Com'rs of D County v. Wright*, 8 Okl. 190, 57 P. 203 (syllabus ¶ 3) (1899).

25. The Authority bears *total responsibility* for including in the appellate record *all* materials necessary for corrective relief. *Hulsey, supra* 24 at 936; *Eckel, supra* note 24 at 924; *Hamid, supra* note 24 at 497.

as it grants reimbursement for those items of expense, is reversed. The Authority failed to bring for appellate review a record that would show the counsel-fee award to be excessive, based on landowner's 40% contingency-contract obligation to its lawyer. That part of the *nisi prius* decision is hence affirmed.

The trial court's post-condemnation-award order is affirmed in part and reversed in part, and the cause remanded for further proceedings not inconsistent with this pronouncement.

LAVENDER, V.C.J., and SIMMS, KAUGER and WATT, JJ., concur.

HARGRAVE, J., concurs in result.

ALMA WILSON and SUMMERS, JJ., concur in part and dissent in part.

HODGES, C.J., dissents.

HODGES, Chief Justice, dissenting:

I cannot agree with the majority's affirmation of the trial court's finding that the attorney fees are reasonable because there was no evidence presented on which to base the finding. Neither can I agree that the OTA has an initial burden of presenting evidence that the fees were unreasonable.

The majority supports its position that the OTA has an initial burden of showing that the fees were unreasonable with a cite to *State ex rel. Howard v. Oklahoma Corp. Comm.,* 614 P.2d 45, 49 n. 5 (Okla.1980). *Howard* was an original action. The issue there was whether the Attorney General alone could represent the Oklahoma Corporation Commission or whether the Corporation Commission could be represented by inhouse counsel. *Howard* addresses the right of the Corporation Commission to chose its own attorney. There is nothing in *Howard*

which addresses an award of attorney fees or supports the proposition that the opposing party has the initial burden of showing that the fees are unreasonable.

In *Burk v. City of Oklahoma City,* 598 P.2d 659, 661 (Okla.1979), this Court set out the criteria for evaluating the reasonableness of attorney fees "in the absence of a contract or a statute fixing the amount." This Court placed the burden of establishing the reasonableness of the fee on the attorney stating: "attorneys in this state should be required to ... offer evidence as to the reasonable value for services performed for different types of legal work."

Then in *Oliver's Sports Center v. National Standard Insurance Co.,* 615 P.2d 291 (Okla. 1980), this Court applied the criteria set out in *Burk* to a contingency fee agreement. Once again placing the initial burden of establishing the reasonableness of the fee on the attorney, this Court noted that, in the context of a contingency fee, "attorneys [are] required to ... offer evidence of the reasonable value for the services performed, predicated on the standards within the local legal community." *Id.* at 295.

Once again, we addressed the issue in *Abel v. Tisdale,* 619 P.2d 608 (Okla.1980), *on remand* 673 P.2d 836 (Okla.1983). In *Able,* this Court held that, only after the attorney presents evidence of the reasonableness of the fee, the burden shifts to the opposing party to show that the fee was excessive. On remand, in *Able v. Tisdale,* 673 P.2d 836 (Okla.1983), this Court reemphasized that the attorney has the initial burden of establishing the reasonableness of the fee. *Id.* at 838. This Court further stated that, in establishing the reasonableness of the fee, the trial court should consider the criteria set forth in the Rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3–A, rule 1.5 (1991).[1] These

---

1. Rule 1.5 states:
    (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    (2) the likelihood, if apparent to the client, that the acceptance of the particular employ-

ment will preclude other employment by the lawyer;
    (3) the fee customarily charged in the locality for similar legal services;
    (4) the amount involved and the results obtained;
    (5) the time limitations imposed by the client or by the circumstances;
    (6) the nature and length of the professional relationship with the client;

factors apply whether the fee is contingent or a fixed amount. *See* Rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3–A, rule 1.5 (1991).

Then in *Root v. KAMO Electric Cooperative*, 699 P.2d 1083, 1093 (Okla.1985), this Court held that the attorney did not have to submit detailed time records to recover attorney fees when the parties had entered into a contingency fee contract. However, the attorney continued to carry the initial burden of establishing the reasonableness of the fees. *Id.*

These cases demonstrate that it has long been this Court's position that a trial judge's award of attorney fees must be based on evidence, the attorney has the initial burden of establishing the reasonableness of the fees, and, then, the burden shifts to the opposing party to show that the fees were excessive. In the present case, the record is void of any evidence establishing the reasonableness of the attorney fees. The attorneys did not present any documentation of the work that was expended on the matter. The only witness who testified at the hearing on attorney fees was the pastor of the New Life Pentecostal Church, and he did not testify as to the reasonableness of the fees.

Because we have previously held that evidence of the reasonableness of the attorney fees is required, I would remand the matter as this Court did in *Abel*, 619 P.2d at 612, for the trial court to take evidence and, based on the evidence, determine the reasonableness of the attorney fees.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.