2006 OK CIV APP 71

**STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff/Appellant,**

v.

**ALLIED TOWER COMPANY, INC., Defendant/Appellee,**

and

**Merchants Bank of South Houston, a/k/a Merchants Park Bank, formerly Southern State Bank, through Gerry E. Monzingo, Trustee, his substitutes or successors; Gerry E. Monzingo, Trustee Merchants Bank—South Houston; and The County Treasurer for Craig County, Defendants.**

**Nos. 100,109, 100,467.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 17, 2006.

Rehearing Denied April 3, 2006.

Jot Hartley, The Hartley Law Firm, PLLC, Vinita, OK, for Appellant.

Robert Alan Rush, Logan & Lowry, LLP, Vinita, OK, for Appellee.

Opinion by JOHN F. REIF, Judge.

¶1 Appeal No. 100,109 and No. 100,467 arise from the same condemnation proceeding in which the Oklahoma Department of Transportation (ODOT) acquired property from Allied Tower Company, Inc. ODOT brought Appeal No. 100,109 alternatively seeking a new trial or remittitur. ODOT contends that the trial court erred by admitting, over objection, incompetent evidence of the value of a spooling machine that, in turn, resulted in the jury returning a verdict that exceeded the commissioners' award by more than 10%. Allied brought Appeal No. 100,-467 seeking reversal of the trial court's attorney fee award. Allied contends that the trial court erred in basing the fee on the *Burk*[1]

---

1. *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

factors, rather than its contractual obligation to its attorneys. Because these appeals involve judgments from the same case in the district court, and judicial economy would be served by their review and disposition together, this court *sua sponte* consolidates these appeals for decision by a single opinion to be filed in each case. Supreme Court Rule 1.27(d), 12 O.S.2001, ch. 15, app. 1.

## I.

¶ 2 Prior to the taking, Allied used the spooling machine in making guy wires for the towers it manufactured. The loss of the land taken by ODOT prevented continued use of the spooling machine. Allied built a new spooling facility and included the cost of the new facility as one of its costs to cure. However, the spooling machine in question could not be moved to the new facility due to the way it was affixed to the land. In effect, it became unusable salvage equipment.

¶ 3 The controversy over the value of the spooling machine arose in the course of testimony by Allied's expert witness. This witness, an engineer, testified about the detrimental effect of the taking on Allied's operations and use of the remaining land. This witness was allowed to give an opinion about the salvage value of the unusable spooling machine over objection of counsel for ODOT. This witness concluded the spooling machine had a salvage value of about $2,500.

¶ 4 ODOT argues that this witness was not an expert in appraising the value of property and that his opinion lacked both a factual foundation and methodology. ODOT points out that $2,500 is more than 10% of the commissioners' award, and basically argues the jury must have considered this amount in returning a verdict that exceeded the commissioners' award by more than 10%.

¶ 5 The chief problem with this reasoning is that Allied did not seek to recover the value of the spooling machine as an item of damage separate from the cost to cure the loss of its use. The loss of use of the spooling machine was reflected in the cost of the new spooling facility.

¶ 6 It was perfectly clear that the spooling machine itself was *not* taken and, in context, it is much more probable that the jury *subtracted* the salvage value of the spooling machine from Allied's cost to cure, *rather than adding* the salvage value to other damages the jury found Allied had sustained. In either case, the effect of admitting this evidence is purely speculative in view of the general verdict, and affords no basis to disturb the judgment on the jury verdict.

## II.

¶ 7 Under the jury verdict which we have left undisturbed, Allied received an award that "exceed[ed] the award of the court-appointed commissioners by at least ten percent (10%)" and, as such, Allied is entitled to be paid "such sum as in the opinion of the court will reimburse such owner for his reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings." 27 O.S.2001 § 11(3). Allied Tower contends that *State ex rel. Department of Transportation v. Norman Industrial Development Corp.,* 2001 OK 72, ¶ 11, 41 P.3d 960, 964, interpreted section 11 to mean a landowner is entitled to recover the attorney fee "for which the landowner is contractually liable."

¶ 8 The rationale for this contractual obligation rule is that "landowners are constitutionally entitled to full compensation for property subjected to the government's eminent domain powers." *Id.* at ¶ 17, 41 P.3d at 965 (footnote omitted). Such full compensation means "full indemnification by just or fair compensation [that places the owner] *as fully as possible in the same position as that [occupied] before the government's taking.*" *Oklahoma Turnpike Auth. v. New Life Church,* 1994 OK 9, ¶ 12, 870 P.2d 762, 766.

¶ 9 The *New Life* case, citing *Root v. Kamo Elec. Coop., Inc.,* 1985 OK 8, 699 P.2d 1083, observes that "in condemnation proceedings a landowner's quest for an attorney's fee ... is measured *by the extent of the landowner's obligation to its lawyer unless, of course, the obligation is excessive.*" The *New Life* case further observes that courts will resolve "any doubt as to the quantum *of the fee [by] look[ing] to the limits on reasonableness or excessiveness of the owner-in-*

*curred obligation." New Life*, 1994 OK 9, ¶ 11, 870 P.2d at 765.

¶ 10 The *Norman Industrial Development* case interprets these pronouncements as directing a court to undertake "two tasks ... when considering the appropriate attorney fees to impose pursuant to ... § 11." 2001 OK 72, ¶ 12, 41 P.3d at 964. The first task is "to determine the extent of the landowner's contractual obligation to its counsel," while the second task is "to consider whether the quantum of the fee obligation is reasonable." *Id.*

¶ 11 The *Norman Industrial Development* case goes on to state that "the winning party's lawyer must ... go forward with proof to establish all elements of the plea [for attorney fees]," but *"a contract-based fee is governed primarily by the landowner's valid obligation to the lawyer." Id.* at ¶ 13, 41 P.3d at 964. After counsel for the landowner has produced evidence on the issues of the contractual amount and its reasonableness, the condemnor who challenges the lawyer-landowner fee contract "has the burden of proving the obligation's unconscionability or unreasonableness." *Id.*

¶ 12 In the case at hand, Allied's counsel testified that Allied had a contract with his law firm to pay "the higher of fifty percent of the difference between the commissioners' award and the amount recovered at trial or our regular hourly rate based upon our usual customary hourly rates." Counsel added, however, that "we specifically discussed with [Allied] that we anticipated that we would be dealing strictly with a lodestar rate times hour calculation." The hourly rate charged by counsel was $175 per hour and ODOT stipulated this was a reasonable rate.

¶ 13 Allied's counsel also testified concerning the time and services he provided in representing Allied. He also introduced two exhibits detailing the time and services he provided. He stated Allied was obligated to pay for the time and services reflected in the exhibits.

¶ 14 Allied's counsel further indicated that he was "familiar with the factors that have been identified by the Oklahoma Supreme Court for determining reasonable attorney fees." The factors that counsel addressed in his testimony appear to be the *Burk* factors. At the outset of counsel's testimony, ODOT stipulated that counsel for Allied was "an expert attorney and a member of the bar and is competent to testify with regard to his fees sought in this case."

¶ 15 The first factor counsel addressed was "time and labor required." When asked if the time records accurately reflect the time and labor required in this case, counsel answered affirmatively.

¶ 16 The second factor counsel addressed concerned aspects in this case that made it unusually difficult or time-consuming. Counsel testified that (1) there were problems in scheduling due to the number of other cases being handled by ODOT's counsel, (2) the tremendous reputation and abilities of ODOT's counsel required more care to do things that you might not have to do with a less experienced opponent, such as special preparation to cross-examine ODOT's expert, (3) a sizable commissioners' award and the special focus on remainder damage as opposed to the value of land taken, and (4) technical aspects of Allied's remainder damages, such as the spooling machine issue and delivery driveway relocation to accommodate the turning radius of big trucks.

¶ 17 The third factor counsel addressed was that the time and labor were performed by an attorney with the requisite skill to perform the legal services. Counsel testified, in effect, that he had considerable experience in condemnation and did the majority of the work for Allied. In his testimony to sponsor the time record exhibits, counsel indicated that centralized control in one lawyer (himself) was "the most cost effective way" and "a pretty efficient way to deliver services."

¶ 18 The next three factors counsel addressed were whether representation of Allied precluded other employment, whether a contingency fee was involved, and whether there were special time limitations. Counsel testified that none of these factors affected the attorney fee obligation.

¶ 19 The seventh factor counsel addressed concerned the amount involved and the re-

sults obtained. Allied's counsel testified that ODOT had requested the jury award between four and five thousand dollars as just compensation, while Allied's evidence was in the neighborhood of thirty-one or thirty-two thousand. Counsel noted that the jury verdict was $21,624 and was "toward our end of the evidence as far as the result."

¶ 20 The eighth factor counsel addressed concerned his experience, reputation and ability. Counsel for ODOT agreed that this factor was addressed by its prior stipulation.

¶ 21 The ninth factor counsel addressed concerned any undesirable aspects of the case. Counsel testified that the case was not generally undesirable, but again mentioned that he thought the sizable commissioners' award made the case very difficult.

¶ 22 The tenth factor counsel addressed was the length of the relationship between counsel's law firm and Allied. Counsel testified that he and the law firm were not Allied's general counsel but had performed legal services for Allied over the years.

¶ 23 The final factor counsel addressed concerned how the amount of the fee requested in this case ($42,870.50) compared to other similar cases. Counsel referred to cases cited in his application where fees between $59,000 and $77,000 had been awarded. He also related that the fee application in the Allied case was "typical" and "right in the range" of his own experience in condemnation matters he had tried. He identified $35,000 to $45,000 as the range he was referring to and felt this range was particularly appropriate for "an industrial type of tract [with] remainder [damage] issues like we had in this case." When asked on cross-examination whether 257 hours was really a lot of time for a condemnation case such as this, counsel for Allied responded "no," and again cited the "remainder issues" involved in the case.

¶ 24 At the close of the evidence that Allied submitted to support its application for attorney fees, counsel for ODOT argued that "I think 257 hours on this condemnation case is excessive." Counsel for ODOT reminded the trial judge that he, the judge, had tried this case and was familiar with the details of the work. Counsel also cited case authority declaring that attorney fees must bear some reasonable relationship to the amount in controversy and the results obtained, and propounded that a forty-five thousand dollar fee was not reasonable in relation to a verdict of $21,624. However, ODOT did not present any evidence to demonstrate the contract "obligation's unconscionability or unreasonableness." *Norman Industrial Development*, 2001 OK 72, ¶ 13, 41 P.3d at 964.

¶ 25 The foregoing demonstrates that Allied carried its evidentiary burden and established a prima facie case on the issues of (1) the extent of the landowner's contractual obligation to its counsel and (2) the reasonableness of the quantum of the obligation. Thereafter, ODOT, as the party challenging the amount of the fee obligation, had the burden of proving the obligation's unconscionability or unreasonableness. Although its counsel capably and skillfully argued that the contractual obligation was unreasonable and excessive, ODOT did not produce evidence to affirmatively demonstrate that the contractual obligation was unreasonable or excessive, or even to rebut Allied's evidence supporting the reasonableness of the contractual obligation.

¶ 26 In the order determining the attorney fee to be awarded Allied, the trial court used the *Burk* factors and found $21,000 to be a reasonable attorney fee. The trial court's order reflects a thorough and thoughtful analysis of the evidence in applying the *Burk* factors. However, the trial court's duty under the *New Life* case was not to determine "a reasonable attorney fee," but to determine the reasonableness of the contract obligation between Allied and its lawyer. As the *New Life* case points out, the *Burk* standards apply in fashioning a reasonable fee "[w]here there is *no contract or statute* establishing the *amount of* an attorney's fee that is due." 1994 OK 9, n. 11, 870 P.2d at 764.

¶ 27 The difference between determining a reasonable attorney fee and assessing the reasonableness of a contractual obligation lies in the allocation of burdens. In both cases, the party claiming the attorney fee carries an evidentiary burden on the issue of reasonableness. However, in a case involv-

ing the determination of a reasonable fee, the party opposing the fee has no burden. In a case involving a determination of the reasonableness of a contractual obligation, the party opposing the fee has the burden of proving the obligation's unconscionability or unreasonableness.

¶ 28 In the case at hand, the error in the trial court's award of attorney's fees to Allied is not the trial court's use of the *Burk* factors. Indeed, counsel for Allied addressed those factors in presenting his evidence to support the reasonableness of the contractual obligation between Allied and his law firm. The error in the trial court's award lies in the fact that it awarded an amount other than Allied's contractual obligation, in the absence of any evidence from condemnor ODOT that the contractual obligation was excessive or unreasonable. We again stress the clear pronouncement in the *New Life* case that a condemnor has the burden of showing the contract obligation is legally offensive or otherwise voidable for excessiveness.

### III.

¶ 29 Another point that warrants discussion concerns the factors to be addressed by landowners and condemnors in meeting their respective burdens as discussed in the *Norman Industrial Development* case and the *New Life* case. The *Burk* factors are certainly the most widely known and most frequently used factors when the reasonableness of an attorney fee is an issue. Their universal character is probably the reason that Allied's counsel addressed them in the evidence he presented to support the reasonableness of Allied's contractual obligation to pay attorney fees to his firm. Likewise, this is probably the reason that counsel for ODOT did not object to Allied's approach in addressing the reasonableness of the contractual obligation, as well as the reason the trial court used the *Burk* factors to determine "a reasonable fee." The *New Life* case, however, recognized a different set of factors for addressing the reasonableness or excessiveness of a landowner's contractual obligation.

¶ 30 The court in *New Life* cited approvingly, in footnote 21, some thirteen factors that have been considered by appellate courts from other states as guides in determining the reasonableness or excessiveness of contract-based fees in eminent domain proceedings. The factors are (1) the time and labor required, (2) the fees customarily charged, (3) the complexity of the proceeding, (4) any contingency in the contract, (5) the lawyer's background and qualifications, (6) the lack of evidence that the fees were unreasonable, (7) substantial benefit to landowners from lawyer's efforts, (8) the novelty and difficulty of issues raised, (9) length of the trial, (10) the measure of success achieved, (11) the weight of the lawyer's responsibility, (12) the serious nature of expropriating an individual's property and the serious responsibility on the lawyer to protect a client's rights in the case, and (13) factors contained in bar disciplinary rules. Although *New Life* identified these factors for evaluating the reasonableness or excessiveness of the amount of attorney fees due under a contingency fee contract, we see no reason why they would not also apply to assessing the reasonableness or excessiveness of an amount due under an hourly rate contract.

¶ 31 In deciding the *New Life* case, the Oklahoma Supreme Court emphasized that "[a] contest over the value of condemned property is an important and serious matter which places considerable responsibility on the landowner's counsel." 1994 OK 9, ¶ 15, 870 P.2d at 767–68. The Supreme Court also emphasized the failure of the condemnor to affirmatively demonstrate the counsel fee was excessive. The Supreme Court suggested that awarding the amount of the contractual obligation would be reasonable where "the jury verdict in excess of 10% of the commissioner's award ... was due in large measure to the diligent efforts and skillful advocacy of landowner's counsel."

¶ 32 In the case at hand, the importance and seriousness of the taking that placed considerable responsibility on Allied's counsel can be seen in the wide disparity between the condemnor's evidence of the damages, $4,000 to $5,000, versus Allied's evidence of $31,000 to $32,000 in damages. Additionally, Allied's counsel related that the success ODOT had experienced in prior

cases, due to the expert witness ODOT had used, posed an additional difficulty and burden in advancing Allied's claim for full compensation. The extra preparation that Allied's counsel testified he undertook to cross-examine ODOT's expert certainly reflects diligent efforts and skillful advocacy to overcome this burden and to achieve compensation more in keeping with Allied's evidence. When the foregoing are considered in light of ODOT's failure to offer evidence to contest or refute the evidence of the reasonableness of Allied's contractual obligation, this court must conclude, as did the court in *New Life*, the contractual obligation was not unreasonable or excessive, and should have been the basis of the attorney fee awarded Allied.

### IV.

¶ 33 In Appeal No. 100,109, we hold that the trial court did not commit reversible error in admitting the opinion testimony of Allied's expert that valued the spooling machine at $2,500. Even assuming the expert was not qualified to give such a valuation opinion, and that the opinion lacked a factual foundation and proper methodology, this court cannot determine whether this evidence was considered by the jury in reaching their general verdict that Allied was due $21,624 as compensation for ODOT's taking. In particular, nothing in the record indicates the jury knew the amount of the commissioners' award ($18,500) or the consequences of awarding compensation to Allied in excess of the commissioners' award. Finding no merit to ODOT's challenge to the judgment on the jury verdict, we affirm the judgment on the jury verdict.

¶ 34 In Appeal No. 100,467, we hold the trial court committed reversible error in determining and awarding "a reasonable attorney fee" under 27 O.S.2001 § 11. The award of attorney fees under this statute is based on the contractual obligation of the landowner to its attorney, unless such obligation is unreasonable or excessive. Allied carried its burden of proof to demonstrate the amount of the contractual obligation and its reasonableness, but ODOT failed in its burden to prove the contractual obligation was unreasonable or excessive. Therefore, the proper amount of the attorney fee recoverable by Allied was the amount due on its contractual obligation to its attorney. The order awarding attorney fees to Allied is reversed and this cause is remanded to the trial court with directions to award Allied attorney fees in the amount of $43,108.

¶ 35 As a final point, this court notes Allied has requested attorney fees on appeal in its brief filed in each appeal. We agree Allied is entitled to recover such fees and grant the request. *Oklahoma Turnpike Auth. v. Asher*, 1993 OK 136, 863 P.2d 1205; *Oklahoma Turnpike Auth. v. Horn*, 1993 OK 123, 861 P.2d 304. On remand, the trial court is further directed to determine the fee that landowner incurred for the services of its counsel in these appeals consistent with the views expressed herein.

¶ 36 IN APPEAL NO. 100,109, JUDGMENT ON THE JURY VERDICT IS AFFIRMED. IN APPEAL NO. 100,467, ORDER AWARDING ATTORNEY FEE IS REVERSED AND CAUSE REMANDED WITH DIRECTIONS TO AWARD ATTORNEY FEE IN THE AMOUNT OF $43,108. ON REMAND, TRIAL COURT SHALL ALSO DETERMINE FEE FOR THE SERVICES OF ALLIED'S ATTORNEY IN CONNECTION WITH BOTH APPEALS CONSISTENT WITH THE VIEWS EXPRESSED HEREIN.

WISEMAN, J. (sitting by designation), concurs, and GABBARD, P.J., concurs in part and dissents in part.

GABBARD, P.J., concurring in part and dissenting in part:

¶ 1 I concur in affirming the judgment in Appeal No. 100,109. However, I dissent from the decision to reverse the trial court's award of attorney fees in Appeal No. 100,467. The attorney fee requested by Allied was excessive and was properly reduced by the trial court. I would therefore affirm its decision.