2012 OK CIV APP 17

**MATERIAL SERVICE CORPORATION,**
Plaintiff/Appellee/Counter–
Appellant,

v.

**ROGERS COUNTY BOARD OF COM-
MISSIONERS, Defendant/Appel-
lant/Counter–Appellee.**

No. 108,020.

Court of Civil Appeals of Oklahoma,
Division No. 3.

Aug. 18, 2011.

Rehearing Denied Oct. 12, 2011.

Certiorari Denied Jan. 30, 2012.

See also, 72 P.3d 63.

Elizabeth C. Nichols, Edmond, Oklahoma, and Jack Mattingly, Jr., The Mattingly Law Firm, Seminole, OK, for Plaintiff/Appellee/Counter–Appellant.

David T. Iski, Assistant District Attorney, Gene Haynes, District Attorney, Claremore, OK, for Defendant/Appellant/Counter–Appellee.

KENNETH L. BUETTNER, Judge.

¶ 1 Defendant/Appellant/Counter–Appellee Rogers County Board of Commissioners (County) appeals from a jury verdict which found County liable for a temporary taking and awarded damages. Plaintiff/Appellee/Counter–Appellant Material Services

Corporation (MSC) appeals the amount of attorney fees and costs awarded, claiming the trial court erred in interpreting the contingent fee agreement. We find no reversible error in the trial record and the jury's decision is supported by competent evidence; we therefore affirm the judgment in favor of MSC. However, we find the trial court erred as a matter of law in interpreting the attorney fees contract and in denying certain costs to MSC. We therefore reverse the Order awarding fees and costs and remand for determination of a reasonable attorney fees award consistent with this opinion and an award of eligible costs.

¶ 2 This case is the third appeal in litigation between the parties over certain property. MSC entered a lease to mine limestone on property in County. In 2000, MSC sought a mining permit from the Oklahoma Department of Mines. MSC alleged that in response, County sought to prevent the mining by first annexing the property and then informing the Department of Mines that mining on the property was restricted by zoning. After MSC's declaratory judgment action on the validity of the annexation was unsuccessful in the trial court, another division of the Oklahoma Court of Civil Appeals reversed, finding that County's annexation was void for lack of statutory notice. See *Material Service Corp. v. City of Claremore*, 2003 OK CIV APP 51, 72 P.3d 63. After the appellate decision was final, MSC obtained a mining permit in 2003.

¶ 3 MSC filed its Petition in this case April 28, 2004. MSC contended that County's void annexation prevented MSC from mining on the property from May 2000 until August 2003, which constituted a temporary commercial taking of a property right. MSC made claims for intentional interference with contract, intentional interference with prospective business, and intentional taking. The trial court granted summary judgment to County on all of MSC's claims. Another division of the Oklahoma Court of Civil Appeals reversed summary judgment on the inverse condemnation claim and remanded the matter for trial. See *Material Service Corp. v. Rogers County Com'rs*, 2006 OK CIV APP 52, 136 P.3d 1063 (summary judg-

ment on the tort claims affirmed based on County's immunity under the Oklahoma Governmental Tort Claims Act).

¶ 4 After remand, jury trial on the issue of inverse condemnation was held October 27–29, 2009. The jury found in favor of MSC and awarded $12,500,000 in compensation. The trial court entered judgment accordingly and later denied County's motions for judgment notwithstanding the verdict and for new trial. The trial court entered its Order June 30, 2010, in which it awarded MSC prejudgment interest of $7,089,041.10; postjudgment interest of $210,399.80; attorney fees of $3,125,000; and costs and other fees totaling $54,680.87.

¶ 5 We first address County's appeal from the jury verdict and award. In inverse condemnation cases, whether there is a taking and the amount of damages are questions of fact for the jury; therefore, we will affirm the jury's decision if it is supported by any competent evidence. *Calhoun v. City of Durant*, 1998 OK CIV APP 152, ¶ 5, 970 P.2d 608 (*cert. denied*). A taking may be found where land is physically taken and occupied, where government action substantially interferes with the use and enjoyment of property, or where government overtly exercises dominion and control over property. *Williams v. State ex rel. Dept. of Transp.*, 2000 OK CIV APP 19, ¶ 24, 998 P.2d 1245. A leasehold interest may be subject to a taking and the leaseholder may have a cause of action in inverse condemnation. See *Grand River Dam Authority v. Brogna*, 1991 OK CIV APP 104, 827 P.2d 901 (leasehold interest in oil and gas is in nature of property right such that leaseholder had right to intervene in condemnation proceeding); *State ex rel. Cartwright v. Dunbar*, 1980 OK 15, 618 P.2d 900; 26 Am.Jur.2d Eminent Domain § 177 ("valid contracts are property which is protected . . . by the Fourteenth Amendment against the taking by a state, unless just compensation is made to the owner.").

¶ 6 County's first claim is that the trial court erred in not dismissing this suit based on expiration of the limitations period. County asserts that the three year limitations period established in 12 O.S.2001

§ 95(2) applies to this case, and it claims that because the trial court determined the taking began in May 2000, MSC had three years from then to file its petition. MSC counters that the limitations period for inverse condemnation cases is 15 years, citing *Drabek v. City of Norman*, 1996 OK 126, 946 P.2d 658.[1] The basis for MSC's claim of inverse condemnation is that County's void annexation prevented MSC from mining the property for three years. MSC filed its action seeking to declare the annexation void within months of the annexation and it filed its petition in this case within one year of the mandate in that case. MSC's petition was timely filed.[2]

¶ 7 It bears noting that County did not raise the limitations issue, beyond one line in its Answer listing affirmative defenses without argument, in the proceedings before summary judgment.[3] After remand of the inverse condemnation claim, County filed a Motion to Dismiss, in which one of its issues was expiration of the applicable limitations period. There County asserted that if the jury determined there was a taking, then the limitations period would be 15 years, and if the jury found no taking, the limitations period would be three years, citing *Oklahoma City v. Daly, supra*.[4] County asserted "(t)he trial court may not decide whether this action is barred by the statute of limitation until the issue of taking is resolved by the trier of facts under the prescribed condemnation procedures." (Record at 232). Of course, the limitations issue would have been waived by the time the question of a taking reached the jury. In this case, the limitations issue is waived for failure to raise it before a motion to dismiss following remand;

furthermore, according to County's own argument in the motion to dismiss, the limitations period was 15 years because the jury ultimately found a taking had occurred.

¶ 8 County next asserts the trial court erred in granting MSC's motion in limine preventing County from showing that MSC failed to exhaust administrative remedies. County's claim is that after it annexed and zoned the property at issue, MSC should have sought to change the zoning to allow mining, rather than seeking a judgment declaring the annexation void. County equates seeking a variance or change of zoning before filing suit to an exhaustion of administrative remedies. The trial court noted in the record, and we agree, that MSC could not be expected to seek administrative relief from annexation and zoning which were later determined to be void. County has failed to cite to the transcript to show that it offered such evidence at trial or that such evidence was rejected by the trial court.

> (A) party aggrieved by a ruling on a motion in limine must raise the issue at the appropriate time during the subsequent trial, either by objecting when the challenged evidence is admitted or by making an offer of proof if the question involves excluded matter.... Rulings on a motion in limine are advisory and preliminary in nature and error is committed, if at all, when a ruling is made during trial by the trial court.

*Badillo v. Mid Century Ins. Co.*, 2005 OK 48, 121 P.3d 1080, n. 16. However, MSC has provided citations to show that this issue in fact was raised at trial and County presented testimony related to this issue to the jury.

1. County's limitations argument is based on *Oklahoma City v. Daly*, 1957 OK 209, 316 P.2d 129, which applied the three-year limitations period for consequential damages to a neighboring building caused by vibrations of machinery used in installing a sewer.

2. In this portion of its Brief, County makes the unusual claim that it is unfair for MSC to extend the limitations period by litigating the issue of whether County's annexation was void. MSC was ultimately vindicated in making that claim, which then gave rise to its claim for damages.

3. The limitations period may be waived:
   > A statute of limitation does not act upon the right to a cause of action so as to deprive the

court of jurisdiction if it is not timely filed; rather it is an affirmative defense to the action that may be waived....

*Consolidated Grain & Barge Co. v. Structural Systems, Inc.*, 2009 OK 14, ¶ 9, 212 P.3d 1168 (footnotes and citations omitted).

4. *Corbell v. State ex rel. Dept. of Transp.*, 1993 OK CIV APP 45, 856 P.2d 575 (*cert. denied*) interpreted *Daly* as providing that where property is damaged short of a taking, the limitations period is three years, but where a taking has occurred, the fifteen year limitations period for recovery of real property is applicable.

County has failed to show an abuse of discretion in refusing to admit evidence on this issue. We find no support for County's claim on the motion in limine.

■■ ¶ 9 County next contends the trial court erred in refusing to grant a directed verdict to County at the close of MSC's case.

When the trial court considers a demurrer to the evidence or a motion for directed verdict, it must consider as true all evidence and all reasonable inferences favorable to the party against whom the demurrer or motion is directed, and disregard any conflicting evidence which is favorable to the demurrant or movant. Either motion should be overruled in the absence of proof which tends to show any right to recover.

*Messler v. Simmons Gun Specialties, Inc.,* 1984 OK 35, 687 P.2d 121, 130. County first asserts that a prohibition on the use of property for purposes declared *by valid legislation* to be injurious to health, morals or safety of the community is not a taking. County has not offered a citation of authority for that statement, but more relevant is that obvious fact that the legislation in this case, the annexation, has been declared void. The United States Supreme Court has held that a regulatory taking which is temporary due to the regulation later being found invalid may be a taking requiring just compensation.

*First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). In Oklahoma, a taking may be found where government action causes substantial interference with the property owner's use and enjoyment. MSC presented evidence that it had a lease for mining, its mining permit application was complete but for public notice, and County directly interfered with the property interest by preventing mining by void legislation. Considering the evidence in the light most favorable to MSC, there was proof of a taking. County has not supported its claim that the trial court erred in denying its request for a directed verdict on the question of a taking.

■■ ¶ 10 County also claims it was entitled to a directed verdict because MSC failed to present evidence of the proper measure of damages. County acknowledges that the trial court properly instructed the jury on damages. We presume the jury followed the instructions and considered evidence in the light of those instructions. *Elmore v. Doenges Bros. Ford, Inc.,* 2001 OK CIV APP 27, ¶ 17, 21 P.3d 65 (*cert. denied* ). Accordingly, despite County's lengthy argument about the proper measure of damages, we consider only whether MSC presented sufficient evidence of damages to overcome a motion for directed verdict on that element.[5]

---

5. "The range of inquiry into the value of property taken or damaged in eminent domain proceedings is left largely to the discretion of the trial court, and unless that discretion is abused the trial court's ruling admitting or excluding such evidence will not be disturbed." *State ex rel. Dept. of Transp. v. Little,* 2004 OK 74, ¶ 11, 100 P.3d 707. "A clear showing of prejudice is required before we will allow a trial court to set aside a jury verdict, or set it aside ourselves, for excessiveness or inadequacy of damages." *Clark v. Bearden,* 1995 OK 71, 903 P.2d 309, 312. Further, business losses are admissible to prove the diminution in fair market value of the property taken. *State ex rel. Department of Highways v. Robb,* 454 P.2d 313 (Okla.1969).

(I)n a temporary taking situation, there appear to be at least two ways to compare the value of the restriction to the value of the property as a whole so as to determine if there has been severe economic loss.... First, a comparison could be made between the market value of the property with and without the restrictions on the date that the restriction began (the change in value approach). The other approach is to compare the lost net income due to the restriction (discounted to present value at the date the restriction was imposed) with the total net income without the restriction over the entire useful life of the property (again discounted to present value). Neither approach appears to be inherently better than the other, ...

*Cienega Gardens v. U.S.,* 503 F.3d 1266, 1282 (Fed.Cir.2007).

A further key factor in arriving at just compensation for a temporary taking is a determination of how the property would have been used by its owner over [the] course of the takings period.... It has been said that, in cases involving a temporary taking, the best approach is a flexible approach that will compensate for losses actually suffered while avoiding the threat of windfalls to plaintiffs at the expense of substantial government liability.

Under some authority, the measure of damages for a temporary taking of property is the diminution in the fair market value of the property during the period of the taking, while under other authority, the measure of compensation

As noted above, we consider the evidence in the light most favorable to the party opposing directed verdict.

¶ 11 MSC's President, Larry Stewart, testified at length about the damage to his business caused by the annexation. Stewart explained that the lease at issue was for property containing 60–70 years worth of limestone with very little "overburden" to be removed to reach the stone. Another benefit of the property was its proximity to road construction projects which were active during the time of the taking, where the limestone could have been used for asphalt. Stewart testified that at the time of the taking, the cost of transporting rock was $.10 per ton per mile and that the location of the lease near the road construction projects meant MSC would have had less overhead for transportation. Stewart testified MSC lost the opportunity presented by the quantity and quality of the stone and its location during the three years it could not mine. Stewart testified MSC had spent $75,000 on its mining permit application and $750,000 on mining equipment (which it used in other mines). Stewart explained the lease required it to pay the landowner $.10 per ton for rock removed, and the lease included a price escalation clause. Stewart explained that in 2000, after it was prevented from mining, a competitor purchased the property next to the lease site, which diluted MSC's market share during the court proceedings. Stewart testified he believed MSC could have had 10% market share the first year, 20% the next, and 25% by the third year, when the $15,000,000 road project had begun. While County asserts the limestone remained in the ground, available to be mined at the end of the taking, Stewart's testimony showed factors unique to the taking period impacted the loss.

¶ 12 MSC presented two valuation experts. Martin Glen had appraised 65 rock quarries since 2000. He used an income capitalization approach to valuing the lease. Glen testified that the terminal value of the lease would normally be appraised and County did not object to that testimony. Glen said factors involved in the market share determination included the fact that County was growing at a rate of 13% in 2000, compared to 2.96% for all of Oklahoma in 2000. The location of the mine also contributed to its potential market share. MSC's other expert was James Hinkle, a CPA. Hinkle testified he determined the value of the lease using MSC's historical information from other mines, numbers obtained from the Department of Mines, and Glen's market share calculations. Hinkle testified that $7.388 million was the lost cash flow that would have been generated from the lease but for County's annexation. Hinkle also testified the lost terminal value of the lease, or the amount the lease could have sold for if it had been fully developed during the taking, was $7.872 million. Hinkle determined MSC's losses were $15 million. County presented a witness who critiqued MSC's witnesses' statements of market share, but County did not present evidence of the value of the taking.

¶ 13 While County contends the rental value is the proper measure of damages, the issue is not simply the rental value of the surface, because MSC's interest was in mining and selling materials. Indeed, County

is not the market value, but what the property is fairly worth for the time during which it is held, and the same rule applies where property, no part of which is taken, is temporarily injured.

Generally, the criterion for determining the compensation is held to be the rental value of the property for the period it was taken plus any actual damage sustained as a result of that taking....

In the case of a temporary regulatory taking, just compensation must be paid for the period during which taking is effective. In such case, the landowner's compensable interest is the return on the portion of the fair market value which is lost as a result of regulatory restrictions. However, a party who is affected by a temporary regulatory taking of property and who has received an award based on a market rate return over the period of the temporary taking is not entitled to compensation for lost profits or the increased cost of development. ... According to some authority, the proper measure of damages when a zoning ordinance is declared invalid by reason of an unconstitutional taking must be decided on the facts of each individual case with a view toward compensating a landowner for losses he or she has actually suffered by virtue of the temporary taking.

29A C.J.S. Eminent Domain § 148 (citations omitted).

relies in part on *Pettro v. U.S.,* 47 Fed.Cl. 136 (2000), in which the U.S. Forest Service temporarily took the right to remove sand and gravel from property. There the court held that the proper measure of damages was the fair rental value of the mineral right taken. While County complains that testimony about the lost lease value was the same as lost profits, it is reasonable to consider the lost lease value to be the fair rental value of the lease. The use of the property is a relevant consideration in determining compensation. The essential consideration in determining compensation for a taking of a property interest is to put the property owner in as good a position as it would be if no taking had occurred. *Id.* MSC presented sufficient evidence of the value of the property taken to overcome County's motion for directed verdict.

¶ 14 County next asserts the trial court erred in admitting certain exhibits and in allowing MSC to introduce two demonstrative exhibits which were not admitted. The trial court's decision whether to admit or exclude evidence will not be reversed absent a finding of a clear abuse of discretion. *Cities Service Co. v. Gulf Oil Corp.,* 1999 OK 14, 980 P.2d 116, 132. First, County asserts error in the admission of minutes and agendas from County Commissioners' meetings relating to annexing the property at issue. We have reviewed the record and find no abuse of discretion in the admission of those exhibits.

¶ 15 County next asserts error in the presentation of four exhibits relating to damages. Two of these were admitted and two were not. The exhibits are demonstrative aids used by MSC's damages experts. County's complaint is primarily that the experts opined on the "lost value of the lease," which County declares to be a euphemism for lost profits. We have noted above that a property owner is entitled to actual losses incurred and the trial court properly instructed the jury on the elements of damages. MSC's experts explained that lost lease value meant loss of worth of the lease due to the failure to develop it at a time when Rogers County was growing and nearby construction projects provided a market for limestone. We do not

find an abuse of discretion in the trial court's decision to admit MSC's Exhibits 57–1 and 57–2.

¶ 16 County next challenges the denial of its Motion for New Trial. County claims it was entitled to a new trial because the jury was allowed to consider evidence of lost profits. As noted above, the court instructed the jury that lost profits were not an element of compensation. We have found no abuse of discretion in the denial of a new trial.

¶ 17 County next contends the trial court erred in refusing to give certain instructions it requested. In addressing alleged errors in the jury instructions, we must consider whether the instructions as a whole fairly and accurately stated the applicable law. *Dutsch v. Sea Ray Boats, Inc.,* 1992 OK 155, 845 P.2d 187. We may not set aside a verdict for misdirection of the jury unless the error has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2001 § 3001.1. When the Oklahoma Uniform Jury Instructions (OUJI) contain an applicable instruction, the OUJI instruction "shall be used unless the court determines that it does not accurately state the law." 12 O.S.2001 § 577.2.

¶ 18 County asserts the trial court erred in refusing County's requested instructions 3, 4, 6, 7, 8, and 10. County's requested instruction 3 purports to define the proof necessary for an inverse condemnation claim. The trial court properly instructed the jury on those elements in Instruction Nos. 11 and 12. County's requested instructions 4 and 10 include misstatements of law. County's requested instructions 6, 7, and 8 all address County's exhaustion of remedies contention, which we have noted above was not a relevant consideration. We find no reversible error in the trial court's rejection of these instructions.

¶ 19 County's final claim on appeal is that costs and attorney fees are awardable in a takings case only when the government entity physically takes and uses property. County relies on the bold language in the applicable attorney fees statute to argue that the legislature intended to omit

regulatory takings from the costs and attorney fees provisions:

> Where an inverse condemnation proceeding is instituted by the owner of any right, title or interest in real property **because of *use* of his property in any public program or project described in Section 1 of this act,** the court, rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property, or the state's attorney effecting a settlement of any such proceeding, shall determine an award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or the acquiring entity's attorney, respectively, reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding. A determination by the court shall be appealable to the Supreme Court in the same manner as any other final order.

27 O.S.2001 § 12 (emphasis supplied by County). County has offered no support for its contention that this attorney fees statute should apply only to physical takings and not to regulatory takings. The statute provides that fees and costs are to be allowed in an inverse condemnation proceeding "awarding compensation for the taking of property." In this case, MSC initiated an inverse condemnation proceeding seeking compensation due to County's taking of the property, in the form of substantial interference by void annexation. The jury determined there had been a taking of MSC's property interest. The Oklahoma Constitution provision requiring compensation for a taking includes the words "public *use*" yet other language in the same provision suggests a non-physical taking may be a public use and it has long been settled that such use may be regulatory.[6] Constitutional and statutory provisions relat-

ing to eminent domain must be strictly construed in favor of the landowner and against the condemning party. *Carter v. City of Oklahoma City,* 1993 OK 134, 862 P.2d 77, 80. In *Carter,* the plaintiffs alleged a taking occurred where the city caused odors to drift over their property. The jury found there had been a taking, and the Oklahoma Supreme Court held that as a result, § 12 applied and the property owners were entitled to an award of attorney fees. Section 12 provides for an award of attorney fees where a taking has been found in an inverse condemnation proceeding. County's constrained reading of the statute is unreasonable. The jury in this case found a taking and the trial court did not err in finding MSC was entitled to an award of reasonable attorney fees and costs.

¶ 20 We next consider MSC's appeal from the award of attorney fees and costs. As noted above, MSC was entitled to an award of attorney fees and certain costs based on 27 O.S.2001 § 12. Following trial, MSC filed its Application to Assess Interest, Attorney's Fees and Costs February 16, 2010. MSC sought an award of $7,086,041.10 in pre-judgment interest and post-judgment interest of $390,707.36 and continuing. MSC relied on its contingency contract with its counsel in asking the trial court to award attorney fees of 25% of the "total recovery," which MSC defined as the jury verdict, plus pre- and post-judgment interest, in the amount of $4,974,039.93, calculated on February 15, 2010. In its Order on fees and costs, the trial court awarded MSC "25% of the recovery pursuant to the terms of the (contract)." The court found that MSC had met its burden of proving the reasonableness of the contingency fee agreement and the work performed. The court further explained:

> This Court must determine what the contractual obligation of the landowner was to

---

**6.** Art. II, Okl. Const. § 24 provides, in pertinent part:

> *Private property shall not be taken or damaged for public use without just compensation.* Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken.... When possession is taken of property condemned for any public use, the owner shall be entitled to

the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation.... In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question.

its attorney. The contingency contract simply states counsel is entitled to 25% of *recovery*. No definition of recovery is defined in the contract. It would clearly be either a settlement amount or jury verdict, to go beyond this would require the Court to speculate what the parties intended.

(Emphasis in original). The attorney contract in this case provides, in pertinent part:

7) It is mutually agreed that should a recovery be made, ... the balance of said recovery to be divided between the CLIENT and ATTORNEY according to the following schedule, to wit:

* * *

c. If recovery is made less than sixty (60) days prior to trial or after a trial, the ATTORNEY shall receive 25% and the CLIENT shall receive 75%.[7]

MSC contends the trial court erred in interpreting the word "recovery" to mean only the amount of compensation awarded in the verdict. "If an ambiguity arises from language used in a contract for the employment of legal counsel, which is not caused by extrinsic facts, construction of a provision presents a question of law for initial resolution of the nisi prius court." *Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks,* 1994 OK 9, 870 P.2d 762, 765. On *de novo* review of this question of law, we find that the word "recovery" means more than the verdict-it means the amount *recovered* by MSC, including pre- and post-judgment interest. Because we find the trial court erred as a matter of law in interpreting the fee agreement, we reverse the award of attorney fees.

¶ 21 We remand for the trial court to determine a reasonable fee based on the following considerations. "(I)n condemnation proceedings a landowner's quest for an attorney's fee to be awarded against the condemnor is measured by the extent of the landowner's obligation to its lawyer unless, of course, the obligation is excessive." *New Life Pentecostal Church of Jenks, supra,* 870 P.2d at 765, citing *Root v. KAMO Elec. Coop., Inc.,* 1985 OK 8, 699 P.2d 1083, 1091–

1092. The holding in *Root* is based on the statutory provision that in condemnation proceedings where attorney fees are warranted (based on the verdict exceeding the commissioners' award by 10%), the fees awardable are those actually incurred. See 66 O.S.2001 § 55. The attorney fees provision for inverse condemnation, 27 O.S.2001 § 12, also allows an award of reasonable attorney fees actually incurred. In *New Life,* the Oklahoma Supreme Court further explained that "(w)hen there is any doubt as to the quantum of the fee we look to the limits on reasonableness or excessiveness of the owner-incurred obligation. If the fee obligation is not excessive, the landowner must be relieved of counsel-fee liability and its burden may be shifted to the defeated condemnor." In this case, the trial court found that 25% of the verdict amount was a reasonable attorney fee. However, because the trial court erred in interpreting the fee contract, we remand for reconsideration of the appropriate attorney fee award. The trial court is directed to determine and award the reasonable attorney fees incurred, considering the contract terms explained above.

¶ 22 MSC's other contention is that the trial court erred in denying certain fees requested. As noted above, the trial court awarded some costs to MSC. In its counter-appeal, MSC complains specifically that the trial court erred in not awarding 1) $2,870.90 for MSC's expert witness on the reasonableness of attorney fees; 2) $1,156.28 for photocopies used in its exhibit notebooks for trial; and 3) $7,823.56 for demonstrative exhibits. In its Reply Brief, County's only response to this argument is to repeat that attorney fees and costs may not be awarded in a regulatory taking claim. We have dispensed with that argument above. Section 12 provides that MSC is entitled to "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceeding." The trial court erred in not awarding these costs. See *Williams Nat. Gas Co. v. Perkins,* 1997 OK 72, 952 P.2d

---

7. The contract included this same percentage agreement for three scenarios-recovery by settlement before suit was filed, recovery after filing but more than 60 days before trial, and the provision quoted above.

483; *Fuller v. Pacheco*, 2001 OK CIV APP 39, ¶ 30, 21 P.3d 74. · On remand, the trial court is directed to add these costs to the judgment.

¶ 23 AFFIRMED IN PART/REVERSED IN PART AND REMANDED.

MITCHELL, P.J., and JOPLIN, J., concur.