OSCN Found Document:ROCKET PROPERTIES LLC vs THE CITY OF TULSA

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ROCKET PROPERTIES LLC vs THE CITY OF TULSA
2025 OK CIV APP 8
567 P.3d 390
Case Number: 121092
Decided: 12/20/2024
Mandate Issued: 03/27/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2025 OK CIV APP 8, 567 P.3d 390

 
 

ROCKET PROPERTIES, LLC, Plaintiff/Appellee,
vs.
THE CITY OF TULSA, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE WILLIAM LAFORTUNE, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED WITH DIRECTIONS

T. Michelle McGrew, R. Lawson Vaughn, Mark Swiney, Tulsa, Oklahoma, For Defendant/Appellant,

Anthony P. Sutton, SUTTON & DAVIS, PA, Tulsa, Oklahoma, For Plaintiff/Appellee.

B.J. GOREE, JUDGE:

¶1 Defendant, City of Tulsa [City] appeals a jury verdict of $1,895,000.00 in this inverse condemnation case on the grounds Plaintiff, Rocket Properties, LLC [Rocket], failed to exhaust its administrative remedies, and thus, the trial court lacked subject matter jurisdiction. Further, Rocket counter-appeals the trial court's rulings of its award to Rocket of prejudgment and post-judgment interest.

¶2 Since 2003, Rocket has owned 4.5 acres of unplatted, undeveloped property located in a low-lying area at 9415 South Yale Avenue, in Tulsa, Oklahoma. A portion of Rocket's bowl-shaped property has been located within a Tulsa Regulatory Flood Plain (codified in Title 11A of Tulsa City Ordinances) since 1978 when areas of flood risk were identified, mapped and adopted by City's ordinances. The fact that Rocket's property is partly within the City's Regulatory Flood Plain does not preclude development of the property. The cost to develop property depends upon the location. Developing property in a flood plain that must be graded to build up the flat surface above the flood level might be more expensive than building on level property that is not in a flood plain.

¶3 In 2015, a prospective purchaser of the property informed Rocket the property was subject to City's regulatory flood plain. Upon receiving knowledge of the flood plain, Rocket undertook an investigation, with the assistance of a civil engineer, Mr. Tanner, to determine the nature and extent of the regulatory flood plain and its burden on the property. 

¶4 On December 14, 2015, Rocket submitted its Earth Change Permit Application to City's Development Services Department. Mr. Holmes, an engineer with City's Development Services Department, sent Rocket's engineering firm two Letters of Deficiency at various times during the application process seeking information which Rocket ultimately did not provide. After six months with no re-submission of the permit application, City closed Rocket's file.

¶5 On February 2, 2018, Rocket filed a lawsuit against City for inverse condemnation, alleging City had taken its property via a physical and a regulatory taking. City urged in its Answer, in its Answer to Amended Petition, in its Motion for Summary Judgment, in the Pretrial Order, during argument on Motions in Limine, during trial at the close of Rocket's case and again after City rested its case, that the case is premature as Rocket failed to exhaust its administrative remedies. The trial court denied all of City's motions and prevented it from asserting the issue as an affirmative defense.

¶6 After a trial of the matter, the jury returned its verdict finding a "taking of the whole property" in favor of Rocket and against City and awarded compensation in the amount of $1,895,000.00. In its January 17, 2023, Journal Entry Upon Jury Verdict, the trial court ordered that Rocket be granted judgment against City for the sum of $1,895,000.00 plus pre- and post-judgment interest, costs, and attorney fees as may be determined upon Rocket's motion. Rocket filed Plaintiff's Motion to Assess Pre-Judgment Interest, Attorney Fees, and Costs. In its Final Supplemental Order and Journal Entry of Judgment, the trial court supplemented the principal amount of the Journal Entry Upon Jury Verdict to include: Prejudgment interest in the amount of $108,058.50; prevailing party costs of $19,109.58; and attorney fees of $1,011,084.04.

¶7 In Case No. 121092, City appealed the Journal Entry upon Jury Verdict, and in Case No. 121438, Rocket appealed the Final Supplemental Order and Journal Entry of Judgment. On July 14, 2023, the Supreme Court issued an order consolidating the two appeals under the surviving case no. 121092. 

I

¶8 The standard of review of City's exhaustion of administrative remedies defense is a legal issue subject to de novo review. Shackelford v. Oklahoma Dept. Of Corr. Ex rel State, 2008 OK CIV APP 37182 P.3d 167Material Service Corp. v. Rogers County Bd. Of Com'rs,2012 OK CIV APP 17273 P.3d 880

¶9 City argues the trial court lacked subject matter jurisdiction over the matter because Rocket failed to exhaust its administrative remedies. It has long been established in Oklahoma that exhaustion of statutory administrative remedies is a jurisdictional prerequisite for resort to the courts. Martin v. Harrah Independent School District, 1975 OK 154543 P.2d 1370Macauley v. Waterman S.S. Corporation, 327 U.S. 540, 543, 66 S.Ct. 712, 90 L.Ed. 839, 842 (1946). 

¶10 One of City's ordinances, Title 11A, sets forth the requirements and necessary permits to develop property, including property within a regulatory flood plain. Title 11A also sets forth the appeals processes, including requests for variances, filing an appeal with the Stormwater Drainage & Hazard Mitigation Advisory Board, filing an appeal with the City Council, or a direct appeal to the City's Engineer.

¶11 City complains that when Rocket submitted its Earth Change Permit, Mr. Holmes, one of City's engineers, in a Letter of Deficiency, indicated Rocket's application was deficient because, among other things, Rocket did not include required calculations to show compensatory stormwater drainage storage for the property. Rocket resubmitted its application and corrected some of the deficiencies but did not include the required compensatory stormwater drainage storage calculations. Mr. Holmes sent another Letter of Deficiency advising Rocket to submit the calculations for compensatory stormwater storage, but Rocket did not do so. Again, after six months with no re-submission of the permit application, City closed Rocket's file. City submits because Rocket failed to complete the permitting process, it failed to exhaust its administrative remedies, and that it prematurely sued for inverse condemnation.

¶12 However, Rocket argues City's two Letters of Deficiency, in addition to requiring that it provide compensatory stormwater drainage storage calculations, also required it to provide and maintain an easement for the proposed flood plain. Rocket also explained that City required Rocket to construct, at significant financial expense and loss of useful acreage, a compensatory stormwater drainage and collection area somewhere on the property to replace the existing regulatory floodplain to manage any excess upstream stormwater runoff. Mr. Sutton, sole member of Rocket, testified the loss of acreage to create a stormwater storage pond would cost at least $600,000.00 and the cost to construct the storage pond easement would be at least $400,000.00. Mr. Holmes likewise testified that City required Rocket to provide both compensatory storage and an easement for City's benefit. He testified Rocket would need to do both of those things "both presently and forever in the future, at its own expense." Thus, Rocket complains City exercised dominion and control over its property by mandating an easement and stormwater management improvements as conditions precedent for it to build on its property.

¶13 The Oklahoma and the United States Constitutions protect private property owners from a governmental taking of its property for public use and benefit. The Okla. Const. Art.II, §24 provides, in part: "Private property shall not be taken or damaged for public use without just compensation . . . When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded." If the government does not institute condemnation proceedings, the property owner has a right to file an inverse condemnation proceeding to recover for the property taken. Page v. Oklahoma City, 1927 OK 440263 P. 448Drabek v. City of Norman, 1966 OK 126946 P.2d 658Mattoon v. City of Norman, 1980 OK 137617 P.2d 1347Snow v. Town of Calumet, 2022 OK 63512 P.3d 369

Regulatory Taking

¶14 A regulatory taking may occur if the regulation itself (an overt act exercising dominion or control over the property) acts to destroy or impair the land's usefulness. Calhoun v. City of Durant, 1988 OK CIV APP 152, ¶13, 970 P.2d 608

¶15 Rocket points out that after receiving City's letters of deficiency in its permitting process, it continued to communicate with City to seek resolution of the issues presented by City's regulatory flood plain. Mr. Tanner geographically plotted the property subject of the regulatory flood plain to determine if the regulatory flood plain actually was supported by at least 40 acres of contributory natural drainage, a condition precedent to the City ordinances permitting the assertion of a regulatory flood plain. Tanner determined that there was only 37 acres of natural contributory drainage to the property. Mr. Holmes also agreed with this. As a result, Rocket challenged, as part of the permit process, City's imposition of the regulatory flood plain on its property. Rocket complains that City continued to impose its regulatory flood plain on its property and its demands that Rocket grant a perpetual easement to City and create compensatory storage on the property as part of the permitting process.

¶16 Here, there is competent evidence of substantial interference with Rocket's use and enjoyment of the property. It is undisputed that City imposed the regulatory flood plain on Rocket's property and that it demanded Rocket grant it a perpetual easement to City and create compensatory storage on the property as a condition precedent to Rocket's ability to develop its property pursuant to the permitting process. It is also undisputed the loss of acreage to create a stormwater storage pond would cost at least $600,000.00 and the cost to construct the storage pond easement would be at least $400,000.00. The perpetual easement alone will restrict Rocket's property for an unlimited duration of time. A taking can occur when a government entity with the right to eminent domain overtly exercises dominion and control over private property, including when a government entity seeks an easement for the use of private property. Mattoon v. City of Norman, 1980 OK 137617 P.2d 1347Material Service Corp. V. Rogers County Bd. of Com'rs, 273 P.3d 8802012 OK CIV APP 17

Physical Taking

¶17 A physical taking may occur if a physical invasion of property by City is severe enough to "effectively destroy or impair the land's usefulness." Calhoun v. City of Durant, 1988 OK CIV APP 152, ¶12, 970 P.2d 608

¶18 Rocket urges that, in effect, City took advantage of its designation of the regulatory flood plain on Rocket's property and used it as a stormwater collection and storage area for the benefit of improvement and development of the upstream properties. Rocket states that, in perpetuity, its property is to be used by and is, in fact, being used by City as a stormwater drainage and storage facility, and that in order to develop its property, it would have to grant an easement and construct a collection pond to City at great expense to it.

¶19 City points out that Rocket's expert, Mr. Tanner, did not provide calculations that it directed excess volume and velocity of stormwater across Rocket's property. However, both he and Mr. Holmes testified City increased the volume and velocity of water onto Rocket's property.

¶20 Rocket's property is in a regulatory flood plain, and there is competent evidence City used and is using the property as a stormwater collection and storage area and has increased the volume and velocity of stormwater across Rocket's property such that the increased volume and velocity of water into Rocket's property constituted substantial interference with its use and enjoyment of the property. Mattoon v. City of Norman, 1980 OK 137617 P.2d 1347Material Service Corp. v. Rogers County Bd. of Com'rs, 273 P.3d 8802012 OK CIV APP 17

¶21 The trial court properly granted judgment in favor of Rocket and against City in the amount of $1,895,000.00 upon the jury's finding of a "whole taking of Rocket's property."

Exhaustion of Administrative Remedies

¶22 City argues the trial court had no subject matter jurisdiction over the matter because Rocket had not exhausted its administrative remedies regarding the permitting process. It complains Rocket must complete City's permitting process, and then administratively appeal an unfavorable decision before Rocket is able to file its lawsuit.

¶23 The requirement to exhaust administrative remedies may be excused where there is a showing the administrative remedies would be futile or inadequate to give the relief required; however, a strong showing is required. Mattoon v. City of Norman, 1980 OK 137Id. at ¶19. The trial court was correct in its continued denial of City's exhaustion of administrative remedies defense.

II

¶24 In its Final Supplemental Order and Journal Entry of Judgment, among other things, the trial court awarded Rocket prejudgment interest in the amount of $108,058.50 calculated pursuant to the pre-judgment interest rates [12 O.S. §727.112 O.S. §727.1

¶25 Rocket counter-appeals this post-judgment ruling regarding the calculation of pre-judgment interest and post-judgment interest. The issues present by this counter-appeal are questions of law, which are reviewed de novo. Lierly v. Tidewater Petroleum Corp., 2006 OK 47139 P.3d 897

Pre-judgment Interest

¶26 Prejudgment interest can be collected on a judgment only if statutorily authorized. See Sisney v. Smalley, 1984 OK 70690 P.2d 1048Carter v. City of Oklahoma City, 1993 OK 134862 P.2d 7715 O.S. §266

The legal rate of interest shall be six percent (6%) in the absence of any contract as to the rate of interest, and by contract parties may agree to any rate as may be authorized by law, now in effect or hereinafter enacted.

¶27 In Carter, the landowner argued that 12 O.S. §72712 O.S. 2022 §727.115 O.S. 2022 §266

In State v. Berry, [1972 OK 41495 P.2d 401

¶28 On the other hand, City argues that 12 O.S. 2022 §727.1

If a verdict of the type described by subsection E of this section is rendered against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, the judgment shall bear interest at the rate prescribed pursuant to subsection I of this section from the date the suit was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment or the date the judgment is filed with the court clerk. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year in which the suit resulting in the judgment is commenced. This rate shall be in effect until the end of the calendar year in which the suit resulting in judgment was filed or until the date the judgment is rendered as expressly stated in the judgment, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date judgment is rendered whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgmennts rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. After the computation of prejudgment interest has been completed, the amount shall be added to the amount of the judgment rendered pursuant to the trial of the action, and the total amount of the resulting judgment shall become the amount upon which postjudgment interest is computed pursuant to subsection B of this section. No award of prejudgment interest against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, including the amount of the judgment awarded pursuant to trial of the action, shall exceed the total amount of liability of the governmental entity pursuant to The Governmental Tort Claims Act.

¶29 Sections 727.1(E) and (F) both apply to tort actions. In Rocket Properties v. LaFortune, 2022 OK 5502 P.3d 1112

¶30 Therefore, the trial court erred in awarding pre-judgment interest pursuant to 12 O.S. 2022 §727.1State ex rel. Department of Highways v. Berry, 1972 OK 41495 P.2d 401Carter v. City of Oklahoma City, 1993 OK 134862 P.2d 77 15 O.S. 2022 §266

Post-Judgment Interest

¶31 Rocket complains that the trial court erred in awarding it post-judgment interest from January 18, 2023, until paid, at the statutory rate of 9.5%, pursuant to 12 O.S. 2022 §727.1

Judgments, including costs and attorney fees authorized by statute or otherwise and allowed by the court, against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts or which this state or a political subdivision of this state is a beneficiary, shall bear interest during the term of judgment at a rate prescribed pursuant to this section from the date of rendition. No judgment against this state or its political subdivisions, including counties, municipalities, school districts, and public trusts of which this state or a political subdivision of this state is a beneficiary, inclusive of postjudgment interest, shall exceed the total amount of liability of the governmental entity pursuant to the Governmental Tort Claims Act.

However, as stated in Rocket Properties v. LaFortune, a cause of action grounded in inverse condemnation is not governed by the Governmental Tort Claims Act [GTCA]. The GTCA does not affect the judgment itself in this case; therefore, City is not limited by the GTCA in its payment of post-judgment interest.

¶32 Rocket insists the issue regarding post-judgment interest is the amount of post-judgment interest to accrue and to be paid on the judgment. Section 727.1(C) provides:

The postjudgment interest authorized by subsection A or subsection B of this section shall accrue from the earlier of the date the judgment is rendered as expressly stated in the judgment, or the date the judgment is filed with the court clerk, and shall initially accrue at the rate in effect for the calendar year during which the judgment is rendered until the end of the calendar year in which the judgment was rendered, or until the judgment is paid, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the judgment is paid, whichever first occurs, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. For each succeeding calendar year, or part of a calendar year, during which a judgment remains unpaid, the judgment, together with postjudgment interest previously accrued, shall bear interest at the rate in effect for judgments rendered during that calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section. A separate computation using the interest rate in effect for judgments as provided by subsection I of this section shall be made for each calendar year, or part of a calendar year, during which the judgment remains unpaid in order to determine the total amount of interest for which the judgment debtor is liable. The postjudgment interest rate for each calendar year or part of a calendar year a judgment remains unpaid shall be multiplied by the original amount of the judgment, including any prejudgment interest, together with postjudgment interest previously accrued. Interest shall accrue on a judgment in the manner prescribed by this subsection until the judgment is satisfied or released.

The post-judgment interest for any given year as may be certified by the Administrative Director of the Courts determines the post-judgment interest rates annually and the amount of interest accrued and to be paid to satisfy the judgment.

¶33 Rocket urges that in the present case, the 2023 post-judgment interest rate of 9.5% applies to the judgment for 2023; the 2024 post-judgment interest rate of 10.5% is then assessed against the judgment in 2024; thereafter, when the Administrative Director of the Courts determines the post-judgment interest rate for 2025, that interest rate will apply to the judgment in 2025. Rocket further urges that until the judgment is paid in full, post-judgment interest rates accruing for 2023, 2024, and potentially 2025, will accrue. We agree. The trial court erred in awarding Rocket post-judgment interest at the rate of 9.5%.

¶34 The jury verdict is AFFIRMED. The trial court's denial of City's exhaustion of administrative remedies defense is AFFIRMED.

¶35 The judgment awarding pre-judgment interest in the amount of $108,058.50 is REVERSED AND REMANDED with instructions for the trial court to calculate pre-judgment interest at 6% pursuant to 15 O.S. 2022 §266

¶36 The judgment awarding post-judgment interest from January 18, 2023 until paid at the statutory rate of 9.5% pursuant to §727.1(I) is REVERSED AND REMANDED with instructions for the trial court to calculate the applicable annual interest rate under §727.1 from the date of entry of the judgment to the date the judgment is paid in full.

MITCHELL, P.J., and DOWNING, J., concur.

FOOTNOTES

McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) set forth several reasons for the rule exhaustion of administrative remedies before resort to the courts: agency decisions frequently require expertise or are discretionary in nature. The agency should be given the first opportunity to either exercise discretion or apply expertise. It is generally more efficient to permit the administrative process to move forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages (the same reasons are the foundation of judicial rules which restrict interlocutory appeals). Additionally, if a complaining party is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

Mattoon. By contrast, in the case of April v. City of Broken Arrow, 1989 OK 70775 P.2d 1347April, at ¶23.

For purposes of computing postjudgment interest as authorized by this section, interest shall be the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%). For purposes of computing prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year.

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105